THE HONORABLE BENJAMIN H. SETTLE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| THERISA GREEN, <br><br>                 Plaintiff, <br><br>    v. <br><br> BISHOP, WHITE & MARSHALL, P.S., <br><br>                 Defendant. | Case No. C10-5206-BHS <br><br> DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> NOTE ON MOTION CALENDAR: FEBRUARY 11, 2011 <br><br> ORAL ARGUMENT REQUESTED |

Defendant, Bishop, White & Marshall, P.S., hereinafter referred to as "BWM," moves this court for summary judgment dismissing the Plaintiff's amended complaint. Summary judgment is appropriate for the following reasons:

     (1)      The summons and complaint prepared by BWM in a collection action against Green fully complied with Washington Superior Court Civil Rules ("CR"), and were not falsely represented as an act undertaken by any Washington State court.

     (2)      The issuance of a second summons is a continuance of the original proceeding under Washington law and not violate the FDCPA (*Federal Home Loan Mortgage Corporation v. Lamar*, 503 F.3d 504 (6th Cir, 2007).

     (3)      BWM did not threaten legal action it did not intend to take.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1201
SEATTLE, WASHINGTON 98101-1801
206/622-5306 FAX: 206/622-0354

1    (4)    Although Green's amended complaint claims that letters and pleadings sent

2    by BWM were confusing and misleading, Green's deposition testimony establishes that

3    she never received any documents other than the initial letter, two summons and

4    complaints, and was neither confused nor mislead by those communications.

5    (5)    Green admits in her amended complaint that the debt validation notice

6    required by 15 USC 1692g of the Fair Debt Collection Practices Act was properly given.

7    (6)    Plaintiff was not damaged by any delay in BWM's pursuit of the collection

8    action because interest on the underlying contract continued to accrue at the contract rate so

9    long as the account remained unpaid.

10    (7)    Plaintiff's claim is barred by the statute of limitations.

11    (8)    Plaintiff's claim is barred by the doctrines of judicial estoppel, and judicial

12    admissions contained in Green's Chapter 13 bankruptcy schedules.

13

14    (9)    This action was brought by Green in bad faith. BWM should be awarded its

15    attorney's fees and costs.

## STATEMENT OF FACTS

16    1.    BWM was retained by Household Finance Corporation III to seek judgment

17    against Green for non-payment of a line of credit. *Affidavit of White, pg. 2, ¶2; Affidavit of*

18    *Patricia Garcia, Household Finance, pg. 2, ¶3.* Green admitted in her amended complaint

19    that disclosures required by15 USC 1692g were sent to Green on May 30, 2008. *See*

20    *Declaration of Kerruish, and attached Exhibit 2 to the Deposition of Green, p. 2, ¶8.*

21    2.    On August 20, 2008, BWM caused a summons and complaint to be served

22    upon Green, with the intention and expectation that filing of the complaint in the Superior

23

24    DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 2

25

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1201
SEATTLE, WASHINGTON 98101-1801
206/622-5306  FAX: 206/622-0354

1   Court pursuant to CR 3 if the claimed debt was not compromised or collected. *White*

2   *Supplemental Affidavit, pg. 2, ¶3.*

3        3.    Following service of the summons and complaint, Green contacted BWM

4   and arranged to make bi-monthly payments of $275.00 in partial payment of the debt.

5   *White, pg. 2, ¶2.* As a condition of accepting periodic payments, BWM required that Green

6   sign a stipulated judgment, and sent a proposed judgment to Green for signature. *White, pg.*

7   *2, ¶2.* Green did not sign or return the proposed stipulated judgment, and later testified that

8   she never received it. *Kerruish, p.3, ¶3.* After making four payments on the debt, Green

9   defaulted. *White, pg. 2, ¶2.* The default occurred as a result of there being insufficient

10   funds in Green's account. *White Supp., pg. 2, ¶2.*

11        4.    At the time she defaulted in her agreement to make periodic payments,

12   Green had not answered the complaint, nor had she demanded, as provided in the summons

13   and CR 3, that BWM file the summons and complaint in the court. After cessation of the

14   periodic payments, BWM intended to proceed with the litigation by moving for a default

15   judgment. Green, however, filed a complaint with the Washington State Attorney General's

16   Office against Household. *White Supp., pg. 3, ¶4.* The complaint contained Green's

17   description of how she obtained the loan from Household, and stated that the ACH

18   payment was not deducted from her account on Sunday, November 15, 2008, as she had

19   insisted in her agreement to make periodic payments on the debt to Household. *Kerruish, p.*

20   *3, ¶4 and Green Deposition Exhibit 10.* As a result of Green's complaint, on January 30,

21   2009 Household requested that BWM delay further action to collect the debt, pending

22   resolution of the Attorney General Complaint. *Garcia, pg. 2, ¶4; White, pg. 3, ¶1.*

23

24   DEFENDANT'S MOTION FOR SUMMARY        BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
     JUDGMENT - 3                         720 OLIVE WAY, SUITE 1201

25                                               SEATTLE, WASHINGTON 98101-1801
                                        206/622-5306 FAX: 206/622-0354

5.     On September 3, 2009, Household requested that BWM proceed with collection action. *Garcia, pg. 2, ¶5; White, pg. 3, ¶1.* Because of the passage of over a year since Green had first been served, and consistent with notice requirements of CR 55(f), BWM served Green with a new summons and complaint, dated October 9, 2009. Service took place on November 4, 2009. The summons and complaint were subsequently filed in Thurston County Superior Court, as Cause Number 09-2-02975-7, on December 16, 2009. *White, pg. 3, ¶1 and 2.*

6.     Notwithstanding the 4 payments on the debt made by Green and her description contained in the January, 2009 AG complaint of how she had obtained the Household Finance loan, Green responded to the second summons and complaint on December 1, 2009 with a letter alleging that she had not entered into any agreement with Household, and owed it no money. *White, pg. 4, ¶1; Kerruish, p. 5, ¶5.*

7.     On March 26, 2010, Green filed this case against BWM. Two weeks later, on April 10, 2010, Green filed a petition for relief under Chapter 13 of the United States Bankruptcy Code, in the United States Bankruptcy Court for the Western District of Washington at Tacoma, Case Number 10-42806. Green's schedules did not reference the litigation herein, nor the claims made by Green against BWM, until BWM noted the absence of the claim in Green's schedules. *White, pg. 4, ¶3.* Green later converted her Chapter 13 case to one under Chapter 7, listing the claim as an asset, but still failed to reveal the pendency of this lawsuit in her amended schedules for the Chapter 7 case. Green's attorneys have never received authority to represent Green in this action from the Bankruptcy Court. *White Supp., pg. 3-4, ¶6, Exhibit 5.*

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 4

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1201
SEATTLE, WASHINGTON 98101-1801
206/622-5306 FAX: 206/622-0354

8.      Eight months after Green filed her complaint against BWM and in response to BWM's request to take Green's deposition, Green sent a letter dated November 30, 2010, addressed to "Bishop, White and Marshall" and signed by her, (*Kerruish, pg. 6,* ¶*7, Exhibit 7*) which states:

> I have not [sic] intensions of proceeding with any litigation against you. The lawsuit is futile. So as of this day I am withdrawing.

9.      At her deposition, Green testified that she was not misled by the service of the second summons and complaint, because she knew nothing had ever been filed with the Superior Court by BWM, having discussed the status of the case with a BWM representative in November, 2008, and checking the court's internet site in November, 2009. *Kerruish, pg. 8,* ¶*8.*

10.      When asked at her deposition what BWM did wrong which justified her filing this complaint, Green stated only that the telephone contacts by BWN, all of which took place more than a year before the filing of this action, were objectionable to her. *Kerruish, pg. 9,* ¶*9.* Allegations of improper telephone contact do not appear in either of the two complaints Green filed with this court.

## ARGUMENT OF LAW

1.      <u>Summary Judgment Standard.</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be rendered forthwith "if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Summary judgment is appropriate against a nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

1   that party's case, and on which that party will bear the burden of proof at trial. *Celotex*

2   *Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus,

3   summary judgment motions permit the Court to resolve lawsuits without the necessity of

4   trials if there is no genuine dispute as to any facts which are material and the moving party

5   is entitled to judgment as a matter of law. *Lodge Hall Music, Inc. v. Waco Wrangler Club,*

6   *Inc.,* 831 F.2d 77, 79 (5th Cir.1987).

7        A party seeking summary dismissal of a case "bears the initial responsibility of

8   informing the district court of the basis for its motion, and identifying those portions of 'the

9   pleadings, depositions, answers to interrogatories, and admissions on file, together with the

10  affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material

11  fact ." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)

12  (quoting Fed.R.Civ.P. 56(c)). Once the moving party has satisfied its burden, it is entitled

13  to summary judgment if the non-moving party fails to designate "specific facts showing

14  that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324. "The mere existence

15  of a scintilla of evidence in support of the non-moving party's position is not sufficient,"

16  however, and factual disputes whose resolution would not affect the outcome of the suit are

17  irrelevant to the consideration of the motion. *Arpin v. Santa Clara Valley Transp. Agency,*

18  261 F.3d 912, 919 (9th Cir.2001); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106

19  S.Ct. 2505, 91 L.Ed.2d 202 (1986). 68 F.3d 1216, 1221 (9th Cir.1995).

20        2.      Purposes Of The Fair Debt Collection Practices Act.

21        It is the purpose of the Fair Debt Collection Practices Act to eliminate abusive debt

22  collection practices by debt collectors, to insure that those debt collectors who refrain from

23  using abusive debt collection practices are not competitively disadvantaged, and to promote

24  DEFENDANT'S MOTION FOR SUMMARY          BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
    JUDGMENT - 6                                    720 OLIVE WAY, SUITE 1201
25                                               SEATTLE, WASHINGTON 98101-1801
                                                206/622-5306 FAX: 206/622-0354

consistent State action to protect consumers against debt collection abuses. 15 USC §1692.

The FDCPA is a consumer protection statute, the goal of which is to protect consumers

from unfair, deceptive and harassing collection practices while leaving collectors free to

employ efficient, reasonable and ethical practices in pursuit of their profession. *Ray v.*

*Citibank (South Dakota), N.A.*, 187 F. Supp.2d 719 (W.D. Ky., 2001).

3.   The Summons And Complaint Did Not Falsely Represent The Status of the Lawsuit.

Green's complaint alleges that BWM violated 15 USC 1692e, subsections (5), (9) and (10). 15 USC 1692e provides as follows:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

...(5) The threat to take any action that cannot legally be taken or that is not intended to be taken...

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer....

With respect to 1692e(9), Green claims that the summons and complaint would indicate to a consumer of least sophistication that the pleadings had been approved by the court when in fact they had not.  Green's counsel, Weisberg & Meyers, made the same claim in *LeClair v. Suttell and Associates*, 2010 Westlaw 417418 (W.D. Wash.). At page 5, section C, of that decision, Judge Coughenour noted that LeClair claimed that the service

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1201
SEATTLE, WASHINGTON 98101-1801
206/622-5306 FAX: 206/622-0354

of an unfiled summons and complaint was a communication "falsely represented to be

authorized by a court in Washington state," relying on section 1692e(9):

> The Court cannot find that LeClair was likely misled to believe that the service of process was authorized by King County Superior Court. In the first place, nothing in the document was false. The summons merely states that a law suit has been started, which, as discussed above, it had: service begins a lawsuit under Washington Superior Court Civil Rule 3. More importantly, the Court finds that reading the first page of the summons would have provided Plaintiff with adequate information about the status of her suit. The Summons says, in no uncertain terms, "You may demand that the plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the plaintiff." (King County Summons (Dkt. No. 20 at 9).) Upon reading this sentence, even the least sophisticated consumer would likely understand that the lawsuit had not yet been filed, and would likely therefore understand that the state court had not issued it.

> Finally, the Court is unwilling to hold that service of an unfiled complaint violates the FDCPA, because the ramifications of this rule would require debt collectors always to file first and then serve. This is simply too sweeping of a proposition for the Court to countenance.*FN7* The document was not deceptive, and therefore did not violate Section 1692(e)(9). Compare *Johnson v. Eaton*, 873 F.Supp. 1019 (M.D.La.1995).

> *FN7.* There are legitimate reasons to serve unfiled complaints. For instance, a debt collector may wish to portray to a consumer honestly that it may file the summons and complaint if the debtor refuses to respond through less formal means. This may, in some cases, lead to the conservation of judicial resources and filing fees.

Here, there was nothing false or misleading about either summons and complaint.

BWM is a law firm, licensed to practice law in the State of Washington. The allegations in

the complaint accurately described a debt alleged to be due Household from Green, which

Green herself later described to the Washington State Attorney General's office in a

complaint authored by Green. The process employed of "serving first" before filing is

authorized by CR 3. There is nothing misrepresentative about either the process employed

or the content of the summons and complaint.

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 8

4.      Under Washington Law, The Second Summons and Complaint Was
        A Continuation Of The Initial Proceeding.

In Paragraph 35 and elsewhere in the amended complaint, Green alleges that BWM violated 1692e(5) by initiating two separate lawsuits: "having two open actions on the same debt constitutes taking an action that cannot be legally taken or is not intended to be taken." Under Washington law, however, the service of a second summons and complaint describing the same claim as the first is merely a continuation of the same litigation, and is not a separate action.  In *Broyles v. Thurston County,* 147 Wn. App. 409, 195 P.2d 985, 1007 (Wn.App.2008), the plaintiff took a voluntary nonsuit on the eve of trial, then promptly re-filed the action and requested a jury trial.  In awarding attorney's fees from the time of the original action, the court found that the second action was the same as the first action and merely "one continuous process of reaching judgment," notwithstanding service of a second summons and complaint. Here, the second summons and complaint were a continuation of the action started several months before.  There was nothing inappropriate about re-serving the summons and complaint, and no "second action" was commenced.

Green further contends that "Washington State Law does not require Defendant to serve the Second Summons and Complaint. Defendant could have filed the First Summons and Complaint with the Court as it initially threatened to do."   BWM did not "drop" the suit, as alleged in paragraph 44 of Green's Amended Complaint. As the affidavit of Household demonstrates, BWM was asked to suspend the collection process because Green had filed a complaint with the Washington State Attorney General against Household. On September 3, 2009, Household subsequently directed BWM to resume collection efforts.

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 9

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1201
SEATTLE, WASHINGTON 98101-1801
206/622-5306 FAX: 206/622-0354

1    Washington Civil Rule 55(f) provides that when more than one year has elapsed

2    since service of a summons and complaint with no appearance having been made, the court

3    shall not enter an order of default or judgment until a notice "of *not less* than 10 days" is

4    given to the defendant by personal service or by certified mail; and if certified mail is used,

5    the return receipt, signed by the recipient, must be supplied to the court.

6    Given that a notice was required by personal service or by certified mail, BWM, in

7    exercising its professional discretion, believed that Household's interest and the interest of

8    justice would best be served by not moving for a default against Green for her failure to

9    answer the first complaint, but by issuing a new summons and complaint, with a new return

10    date, and giving Ms. Green a full 20 days' notice of the opportunity to respond before a

11    default judgment.   Indeed, Judge Coughenour in the *LeClair v. Suttell* matter expressed

12    concern that the debtor collector, after a lapse of seven months, had not given the debtor

13    adequate opportunity to respond to a motion for default: "Defendant's behavior, in serving

14    Plaintiff *seven months* before filing the summons and complaint in state court, and then

15    moving for default a scant *five days* after filing, is deeply troubling." *Id.* at p. 4.

16    The facts in *Federal Home Loan Mortgage Corp. v. Larmar*, 503 F. 3d 504 (6th Cir.

17    2007), are similar to those present here. There, a summons and complaint was both mailed

18    and subsequently personally served. The debtor brought an action against FHLMC's

19    attorneys alleging confusion as a result of the two separate services. The Sixth Circuit

20    agreed with the findings of the District Court:

21    The first service put [the debtor] on notice that she could contest the debt. The
     second service described the same property and at the very least put Lamar on
22    notice that she should contact [the law firm] to clarify what she had received if she
     was confused. *Id.* at p 512.
23

24    DEFENDANT'S MOTION FOR SUMMARY              BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
     JUDGMENT - 10                                        720 OLIVE WAY, SUITE 1201
25                                                      SEATTLE, WASHINGTON 98101-1801
                                                        206/622-5306 FAX: 206/622-0354

1    In *Kelly v Great Seneca Financial Corp.,* 443 F. Supp. 2d 954 (S. D. Ohio, 2005),

2    overruled in part on other grounds by the Supreme Court's decision in *Jerman v. Carlisle* et

3    al, 129 S. Ct 2863, 174 L. Ed.2d 575, 77 USLW 3701 (2009), the attorneys for the creditor

4    filed suit but did not pursue it. Instead, they dismissed the case when discovery was sought

5    by the debtor. In a subsequent action against the debt collector, the debtor alleged that the

6    dismissed complaint was "bogus" and intended to harass, oppress or abuse the debtor. The

7    court found that the filing of a complaint in an appropriate venue is not actionable as a

8    violation of the FDCPA. The "natural consequences" of filing a lawsuit is to bring the issue

9    to the court for resolution, not to harass the debtor. *Id* at page 960.  The court held that no

10    violation of the FDCPA had occurred.

11    The summons and complaint here did not falsely represent what they purported to

12    be.  Nor did BWM misrepresent the status of the litigation.  As Judge Coughenour stated in

13    *LeClair v. Suttell*, the summons states in "no uncertain terms," (*Id*  p.6) that Green could

14    demand that suit be file.  She did not do so, and in fact did not even answer the complaint.

15    Given the request of Household that litigation be suspended, and the additional opportunity

16    for Green to respond to the second summons and complaint after failing to answer the first

17    complaint, it is hard to imagine that Green would have been better off had BWM merely

18    moved for default, giving only the minimum notice it was entitled to provide.

19    BWM had the discretion not to file the first action. As Judge Coughenour correctly

20    noted in *LeClair,* there are a number of compelling reasons not to file a complaint.  One of

21    those reasons is to give the parties time to resolve the matter by settlement. Green's initial

22    response to the service of the summons and complaint was to make periodic payments on

23    the debt. After Green's payments ceased, Household requested that BWM suspend the

24    DEFENDANT'S MOTION FOR SUMMARY          BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
JUDGMENT - 11                                          720 OLIVE WAY, SUITE 1201
25                                                      SEATTLE, WASHINGTON 98101-1801
                                                        206/622-5306 FAX: 206/622-0354

1  collection action pending the outcome of its investigation of the Attorney General's
2  complaint. Fortunately for Green and Household, BWM had not filed the lawsuit. Had it
3  done so, a delay in pursuing the matter would have run afoul of Thurston County Local
4  Rule 16, which requires a status conference and case scheduling order 90 days after filing
5  the complaint, and forced Green to incur the cost of defending the lawsuit immediately.

6        Nor was Green misled or confused, by her own admission.  When she received the
7  second summons and complaint, she checked the Thurston County Superior Court web site,
8  and determined on her own that no summons and complaint had been filed with the court.

9        5.     BWM Never Misrepresented Its Intentions Or Authority to Proceed.

10        Green also contends that BWM "threatened to take action which it could not take or
11  did not intend to take," as prohibited by 1692e (5). To prevail under this section, plaintiff
12  must show that (1) the threatened action cannot be taken; (2) the action is not intended to
13  be taken; or (3) the action involves the communication of false information. *Whayne v. US*
14  *Department of Education*, 915 F. Supp. 1143, 1145 (D. Kan, 1996). Here, neither summons
15  and complaint contained false information, nor was the action one that could not lawfully
16  be taken. The authority from Household included authority to bring suit and take such
17  actions as were necessary to collect a debt.  Further, Plaintiff cannot show that BWM did
18  not intend to bring the action.  BWM did file the suit with the court and would have
19  proceeded to judgment but for Plaintiff's bankruptcy.   The AG complaint delayed
20  prosecution of the suit until Household directed that BWM proceed with collection.

21        6.     Plaintiff Was Not Misled or Confused by Letters She Never Read.

22        After Green was served with the original summons and complaint, she contacted
23  BWM and made payment arrangements.  BWM sent several letters confirming the

24  DEFENDANT'S MOTION FOR SUMMARY         BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
    JUDGMENT - 12                          720 OLIVE WAY, SUITE 1201
25                                          SEATTLE, WASHINGTON 98101-1801
                                           206/622-5306 FAX: 206/622-0354

arrangements, along with a proposed stipulated judgment.  No mention was made of these documents in Green's original complaint.  Following discovery in which BWM produced those documents, Green filed an amended complaint in which she alleged in paragraphs 19 through 22 that the letters sent by BWM were misleading and confusing.  However, Green then testified in her deposition that she never received *any* of the letters, or the stipulated judgment.  *Kerruish, p. 3, ¶3.*  Accordingly, she could be neither misled nor confused by documents she never read, and her claims regarding these documents must be dismissed.  It is difficult to understand why Green's amended complaint was filed to assert this claim, given her testimony that she never saw the letters.

  7.  <u>The Notice Required By 15 USC 1692g  Contained No Misrepresentations.</u>

  In her original complaint, Green claimed that BWM failed to give the debt validation notice required by 15 USC 1692g.  However, Green admitted that the debt validation notice was given by BWM in paragraph 8 of her amended complaint, which refers to Exhibit A containing the required notice. Green also amended her complaint to allege in paragraph 31 that the May 8, 2008 letter was "mass produced. . . creating a deceptive impression that an attorney had involvement where there was none, as no attorney had reviewed the Plaintiff's file."   Green offers no evidence to support her contention, and could not recall having read the letter when questioned about it in her deposition.  The letter creates no false impression.  The letter expressly states that "at this time, no attorney with this firm has personally reviewed the particular circumstances of your account and no decision has yet been made as to whether further action is appropriate."   Such language was expressly found not to be misleading nor

DEFENDANT'S MOTION FOR SUMMARY     BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
JUDGMENT - 13             720 OLIVE WAY, SUITE 1201
                  SEATTLE, WASHINGTON 98101-1801
                 206/622-5306 FAX: 206/622-0354

1   misrepresentative in *Greco v. Trauner, Cohen & Thomas, LLP*, 2004 WL 1588208 (W.D.

2   N.Y.), affirmed, 412 F.3d 360, 365 (2nd Cir, 2005), wherein the lower court stated that:

3          The collection letter at issue here does not misrepresent the law firms' position. It
       states plainly that the firm has been retained to collect the money owed to Bank of
4      America and take "such action as necessary as to protect our client." . . . The letter
       clearly identifies the firm as a law partnership, but also discloses that no attorney in
5      the firm has personally reviewed the circumstances of the debtor's account. Even
       the least sophisticated debtor, reading the letter with due care, would conclude that
6      the letter is from a law firm, but that no lawyer in the firm has evaluated the case to
       determine the validity of the debt, or with an eye towards filing a lawsuit against
7      him. The letter is not deceptive and, therefore, does not violate § 1692e(3).

8
       On appeal the Second Circuit held that:
9
10         the defendants' letter included a clear disclaimer explaining the limited extent of
       their involvement in the collection of Greco's debt. The defendants stated that,
11     although "this office represents the above named BANK OF AMERICA" in the
       collection of Greco's debt, "[a]t this time, no attorney with this firm has personally
12     reviewed the particular circumstances of your account." Nothing else in the letter
       confused or contravened this disclaimer of attorney involvement. In light of the
13     disclaimer, we agree with the district court that the least sophisticated consumer,
       upon reading this letter, must be taken to understand that no attorney had yet
14     evaluated his or her case, or made recommendations regarding the validity of the
       creditor's claims. Accordingly, the district court was correct to conclude, as a
15     matter of law, that the defendants had not used any "false, deceptive, or misleading
       representation or means in connection with the collection of any debt," 15 U.S.C. §
16     1692e, including the "false representation or implication that any individual is an
       attorney or that any communication is from an attorney," 15 U.S.C. § 1692e(3),
17     with meaningful involvement as an attorney in the debtor's case. *Id* at P. 365.

18     Recently, a Federal District Court in California affirmed such a disclaimer as not

19  misrepresentative. In *Walsh v. Frederick J. Hanna & Associates*, P.C., 2101 WL 5394624

20  (E.D. Cal.) the court held:

21         Further, since the letter contains a clear disclaimer stating that the authors of the
       letter have not reviewed the file, the least sophisticated debtor would not be
22     deceived or misled about whether counsel personally considered the debtor's file
       before the letter was sent. *Greco v. Trauner, Cohen, and Thomas LLP*, 412 F.3d
23     360, 365 (2d.Cir. 2005) ... In light of the explicit disclaimer in Defendant's letter

24  DEFENDANT'S MOTION FOR SUMMARY          BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
    JUDGMENT - 14                                      720 OLIVE WAY, SUITE 1201
25                                              SEATTLE, WASHINGTON 98101-1801
                                                206/622-5306 FAX: 206/622-0354

that no attorney reviewed Plaintiff's file, the least sophisticated debtor would understand that the senders of the letter had evaluated Plaintiff's file.

Green offers no evidence regarding the extent of the attorney involvement or review of her account.  This claim must fail.

8.    The Obligation To Household Was Not Increased By Delay.

In paragraph 40 of the amended complaint, Plaintiff contends that BWM was asking for damages to which it was not entitled because "Defendant decided to wait a year to move forward with suit" which caused "an unjustified increase in the amount demanded from Plaintiff." In other words, Green claims a violation of the FDCPA because she was not sued soon enough. There is no merit whatsoever to this claim. The claim in the State Court against Green was based upon a written contract bearing interest at an initial variable interest rate of 23.5% per annum. *See Affidavit of Garcia, p.2.* The agreement provides:

> PROMISE TO PAY: You promised to pay Lender (a) the amount borrowed under this Agreement; (b.) Finance Charges, Administrative Charges,(the late charge and bad check charge), and other charges provided in this Agreement...

> "DEFAULT AND CANCELLATION OF AGREEMENT . . . in the event your credit privilege is cancelled, we have the right to convert your Account to a fixed rate of interest which shall be no higher than the variable contract rate in effect at the time of conversion...

Green was required to make payments until all sums due under the contract were fully paid.  RCW 4.56.110 provides that post-judgment interest shall accrue at the contract rate. So long as the account remained unpaid, the balance owed and accruing interest thereon continue to accrue at the same rate, *whether or not judgment was entered.* Household referred the matter to BWM on May 6, 2008. At that point, the interest rate was 21.250% per annum, the lowest rate since the inception of the contract. From the time the

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 15

1   account was referred to BWM, it bore interest at the simple rate of 21.250%, and that rate

2   did not change.  Delay in the entry of a judgment made no difference in the interest rate.

3         9.    <u>Plaintiff's Claims Are Barred By The Statute Of Limitations</u>.

4         Green alleges multiple claims; the statute of limitations should be deemed to have

5   run from the date of each alleged violation.  15 USC 1692(k)(d) provides:

6
7       An action to enforce any liability created by this title may be brought in any
    appropriate United States district court without regard to the amount in controversy,
    or in any other court of competent jurisdiction, within the one year from the date on
8       which the violation occurs.

9   The limitation period runs from the date of the offending act. *Watkins v. Peterson*

10  *Enterprises, Inc.,* 57 F. Supp.2d 1102 (E.D. Wash., 1999) In the *Watkins* case, the

11  consumer filed an FDCPA suit over various writs of garnishment. The District Court held

12  that writs served more than one year prior to the filing of the FDCPA claim were time-

13  barred. See, also *Jameson v. IQ Data International,* 2010 WL1410712 (W.D. Wash.) and

14  *Malik v. Unifund CCR Partners,* 2009 WL5197820 (W.D.Wash.), which dealt with

15  multiple writs allegedly violating the FDCPA.

16        Where a consumer complained of multiple phone calls, the Federal District Court in

17  Oregon held that all calls made more than one year prior to the filing of the FDCPA were

18  time-barred. *Blue v. Bronson and Migliaccio,* 2010 WL 4641666 (D. Or.) A complaint

19  alleging deceptive and misrepresentative letters and improper charges to an account was

20  dismissed as time-barred, where more than one year had elapsed from the date of the

21  letters. *Edstrom v. NDEX West, LLC,* 2010 WL 4069482 (E.D. Cal.). Where the only

22  allegation of wrongful conduct that took place within one year of filing an FDCPA claim

23

24  DEFENDANT'S MOTION FOR SUMMARY         BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
    JUDGMENT - 16                                  720 OLIVE WAY, SUITE 1201
25                                                SEATTLE, WASHINGTON 98101-1801
                                             206/622-5306 FAX: 206/622-0354

1  was a notice of trustee sale, all other claims were dismissed as untimely. *Jelsing v. MIT*

2  *Lending*, 2010 WL 2731470 (S.D. Cal); *Barker v. Avila*, 2010 WL 3171067 (E.D. Cal.).

3        Some courts have held that where a demand letter is followed by the filing of a suit

4  to collect the debt, the statute of limitations runs from the date the demand letter was sent,

5  and not the date that the summons and complaint was filed.  In *Nutter v. Messerli &*

6  *Kramer*, 500 F.Supp.2d 1219 (D. Minn. 2007), the court held that the statute of limitations

7  is deemed to have run from the date the debtor was first notified of the misrepresentation,

8  and not from the date of a subsequent affidavit filed in a collection actions. In *Sierra v.*

9  *Foster & Garbus*, 48 F.Supp.2d 393 (S.D.N.Y., 1999), debt collector sent four letters prior

10 to filing suit. While a collection suit was filed within statute of limitations, the letters were

11 outside statute of limitations. The court found that the claims were time-barred.

12       Other courts distinguish between "continuous violations" and "discrete acts."

13 Where separate "discrete" violations of the FDCPA occur, only claims based upon acts

14 occurring before the statute of limitations passes are not barred. See *Joseph v. JJ Mac*

15 *Intyre Companies, LLC.*, 281 F. Supp. 2d 1156 (N.D. Ca. 2003), allowing a claim for calls

16 made within the statute of limitations, but denying relief for calls made outside.

17       Where the FDCPA claim is based upon the improper pursuit of debt collection

18 litigation, the violation occurs when the litigation is commenced, and actions which take

19 place during the course of the litigation do not start a new period of limitations. In *Nutter v.*

20 *Messerli & Kramer*, 500 F.Supp.2d 1219 (D. Minn. 2007), the court held that the course of

21 litigation itself is not a "continuing violation." To be actionable, the consumer must show

22 that any acts in violation of the FDCPA were independent of the filed suit. *Schaffhauser v.*

23 *Burton Neil & Associates*, 2008 WL 857523 (M.D. Pa.).

24

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 17

25

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1201
SEATTLE, WASHINGTON 98101-1801
206/622-5306 FAX: 206/622-0354

1    In *Naas v. Stolman,* 130 F.3d 892 (9th Cir. 1997), the court considered the statute of

2    limitations where the alleged violation was the filing of a lawsuit in a California court. The

3    consumer argued that the FDCPA claim ran from the date of judgment in the collection

4    action. The Ninth Circuit disagreed, holding that the date of filing the complaint was the

5    date of accrual of a cause of action where the FDCPA claim was based upon the suit itself.

6    The Ninth Circuit did not address the issue of whether the statute of limitations ran from

7    the date of filing versus the date of service, focusing instead upon the consumer's argument

8    that the statute of limitations ran from the date of judgment.

9    Under any of the forgoing rulings, Plaintiff's claims are time barred. The acts

10   complained of are discrete "offending acts" which occurred more than one year from the

11   date the complaint herein was filed.   The complaint in this action was filed on March 25,

12   2010. Green claims in paragraph 31 of the amended complaint that BWM's May 30, 2008

13   letter contained a "signature block," falsely implying that the original letter did not contain

14   an original signature. It did contain an original signature, and any claim under the letter

15   expired on May 30, 2009.   Green complains that the original summons and complaint

16   served in August 2008 was deceptive.  That claim expired in August 2009.

17

18   In her amended complaint, Green makes new claims based upon her payment

19   arrangements with BWM in late 2008. In paragraph 12 of her amended complaint, Green

20   alleges that BWM failed to send a confirmation letter in November 2008, and failed to

21   make a scheduled ACH withdrawal. While it is difficult to understand what violation of the

22   Fair Debt Collection Practices Act allegedly occurred, the statute of limitations ran on any

23   such claim in November 2009.  Further, a simple look at a calendar would reveal that

24   DEFENDANT'S MOTION FOR SUMMARY          BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
     JUDGMENT - 18                          720 OLIVE WAY, SUITE 1201
25                                           SEATTLE, WASHINGTON 98101-1801
                                             206/622-5306 FAX: 206/622-0354

1   November 1, 2008 was a Saturday, not a banking business workday. The ACH withdrawal

2   took place the following Monday, on November 3, 2008. See Supp. Affidavit of White.

3       Green contends in paragraph 13 of her amended complaint that the ACH payment

4   for November 15 was not taken until November 17, 2008. Again, there is no apparent

5   violation of the FDCPA, and the statute of limitations expired on any such claim on

6   November 15, 2009. Further, November 15, like November 1, 2008 was a Saturday.

7   Although the ACH payment was taken on Monday, November 17, 2008, the payment was

8   returned for insufficient funds. See White Supp., page 2, ¶2.

9

10       In paragraph 16 of the amended complaint, Green complains that a second

11   summons and complaint were served after BWM sent a stipulated judgment setting forth

12   the terms of agreed upon proposed payment arrangements, a condition of Household's

13   continued acceptance from Green of periodic payments to retire the debt. BWM sent the

14   proposed stipulated judgment to Green on October 24, 2008, and requested that it be signed

15   and returned by November 7, 2008.  Again, any claim under the FDCPA related to

16   submission of the proposed stipulated judgment has expired. Further, although she agreed

17   to make the payments and commenced making the payments, Green never signed or

18   returned the stipulated judgment and later defaulted in making her payments.  She could

19   hardly expect that the matter had been resolved, so any claim Green asserts related to the

20   service of the initial summons and complaint expired In November, 2009, one year after

21   she was supplied with the stipulated judgment and defaulted in making periodic payments.

22

23

24   DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 19

25

BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
720 OLIVE WAY, SUITE 1201
SEATTLE, WASHINGTON 98101-1801
206/622-5306 FAX: 206/622-0354

1    Green contends in paragraph 19 of her amended complaint that BWM sent letters

2    regarding ACH payments from September 3 to October 15, 2008. Green questions the

3    balance due stated in those letters. She testified in her deposition, however, that she never

4    received any of these letters. The first letter dated September 3, 2008 stated an account

5    balance of $8,947.37. A September 9, 2008 letter included a balance of $9,002.37,

6    reflecting a process service fee of $55.00. All payments made by Green were applied to

7    outstanding interest, which vastly exceeded her payments. The stipulated judgment

8    complained of in paragraph 20 of the amended complaint included the original balance of

9    $8,947.37 plus costs which included the $55 service. In any event, Green never made any

10   inquiry as to the charges or application of any payment. Any claim based upon the letters

11   expired prior to her lawsuit, since the last letter was sent in November, 2008.

12

13    Under the *Nutter, Schaffhauser* and *Naas* line of cases, the action based upon

14   service of two summons and complaints is also barred. Washington Civil Rule 3(a)

15   provides that a civil action is commenced by service of a copy of the summons or by the

16   filing of the complaint. Since (a) the action is deemed commenced by service of the

17   summons and complaint, and (b) the statute of limitations is deemed to have run from the

18   date of the offending acts, and (c) none of the plaintiff's claims are based upon conduct

19   taking place after the after service of the second summons and complaint, then the statue

20   limitations should be deemed to have run from the date of the original service of the

21   summons and complaint on August 20, 2008, more than one year prior to the filing of the

22   FDCPA action in March, 2010. Only one action was ever pending against Green, as

23

24   DEFENDANT'S MOTION FOR SUMMARY          BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
     JUDGMENT - 20                                      720 OLIVE WAY, SUITE 1201
25                                                  SEATTLE, WASHINGTON 98101-1801
                                                    206/622-5306 FAX: 206/622-0354

1    explained in *Broyles v. Thurston County*; since it was commenced more than one year

2    before the filing of this action, any FDCPA claim based upon such filing is time barred.

3        10.    <u>Green's Claim Is Barred By Judicial Estoppel And   Judicial Admission.</u>

4        Where, as here, a debtor has failed to list a claim in bankruptcy schedules, courts

5    have routinely held that judicial estoppel prevented the debtor from later asserting the

6    claim. The court in *Ingram v. Thompson,* 141 Wn. App. 287, 169 P.3d 832 (2007) noted:

7            It is well established that judicial estoppel may apply to parties who accrue legal
             claims, file for bankruptcy, fail to list the claims among their assets, and then
8            attempt to pursue the claims after the bankruptcy discharge. *Bartley-Williams v.
             Kendall*, 134 Wash.App. 95, 98-99, 138 P.3d 1103 (2006). "The courts will not
9            permit a debtor to obtain relief from the bankruptcy court by representing that no
             claims exist and then subsequently to assert those claims for his own benefit in a
10           separate proceeding." *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir.1999),
             quoting *Rosenshein v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y.1996). "By not
11           disclosing the asset, the debtor keeps an asset that may have created a dividend for
             the debtor's unsecured creditors." *Johnson v. Si-Cor, Inc.*, 107 Wash.App. 902, 909,
12           28 P.3d 832 (2001)…*Cunningham v. Reliable Concrete Pumping*, 126 Wash.App.
             at 224-25, 108 P.3d 147 (lawsuit dismissed based on judicial estoppel where debtor
13           commenced an action for workplace injury he had known about but not disclosed
             during bankruptcy); *Hamilton v. State Farm Fire and Casualty Co., 270* F.3d 778
14           (9th Cir.2001) (plaintiff judicially estopped from pursuing a claim not disclosed on
             his bankruptcy schedule). Id at p. 291.
15

16       In *Larson v. Groos Bank*, 204 B.R. 500 (W.D. Tex., 1996), a Chapter 7 debtor

17   brought an action in the Federal District Court against Groos Bank for violation of the Fair

18   Credit Reporting Act. No mention was made of the claim in his bankruptcy schedules. The

19   court held that the bank was entitled to summary judgment on the basis of a judicial

20   admission. As in this case, the *Larson* court noted that it was undisputed that a verified

21   schedule did not list any claim against the defendants.  The court held that:

22           Specifically, statements in bankruptcy schedules are executed under penalty of
             perjury and when offered against a debtor are eligible for treatment as judicial
23           admissions. *In the Matter of Gervich*, 570 F.2d 247, 253 (8th Cir.1978); *In the*

24   DEFENDANT'S MOTION FOR SUMMARY                    BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
     JUDGMENT - 21                                          720 OLIVE WAY, SUITE 1201
25                                                        SEATTLE, WASHINGTON 98101-1801
                                                         206/622-5306 FAX: 206/622-0354

1  *Matter of Musgrove*, 187 B.R. 808, 812 (Bankr.N.D.Ga.1995) (holding entry in
   debtor's schedules, standing alone, constitutes a judicial admission). See also *In re*
2  *Leonard*, 151 B.R. 639, 643 (Bankr.N.D.N.Y.1992) (holding schedules are
   admissible as admissions by party-opponent); In re Applin, 108 B.R. 253, 257
3  (Bankr.E.D.Cal.1989) (holding schedules can be treated as admissions by party-
   opponent); Fed.R.Evid. 801(d)(1). Therefore, Larson's statement of "None" is a
4  judicial admission that he placed no value on this instant lawsuit. In other words,
   Larson judicially admitted that he suffered no damages. Id. at p. 501.
5

6  In *Payless Wholesale Distributors, Inc. v. Alberto Culver(P.R.) Inc.*, 989 F.2d 570, 571(1st

7  Cir. 1993), failure to schedule a claim in bankruptcy was described as "palpable fraud."

8       Green's counsel is no stranger to the doctrine of judicial estoppel or judicial

9  admissions.  In a matter pending before Judge Burgess of this court, *Allers-Petrus v*

10 *Columbia Recovery Group* (Westlaw 799676, WD Wa. at Tacoma, 2009) Weisburg and

11 Meyers made similar claims under the Fair Debt Collection Practices Act. Judge Burgess

12 noted that the debtor, prior to filing the action against Columbia, filed a Chapter 13

13 proceeding but did not list the FDCPA claim in her schedules. The debtor only amended

14 her schedules after Columbia filed a motion for summary judgment. The court noted that

15 judicial estoppel would be applied (1) when a party's position was "clearly inconsistent"

16 with its earlier position, (2) judicial acceptance of an inconsistent position in a later

17 proceeding would create "the perception that either the first or the second court was

18 misled," and (3) an unfair advantage would be detrimental to the opposing party if estoppel

19 was not imposed. Judge Burgess then held that:

20       There are no genuine issues of material fact. Plaintiff Allers-Petrus filed for
         bankruptcy petition with full knowledge that she had at a FDCPA claim against
21       Columbia. Plaintiff did not seek to amend her schedule of assets until after her plan
         had been confirmed and Columbia filed the instant motion for summary judgment
22       in Plaintiff's subsequent lawsuit. Although the court finds all three prongs satisfied
         in this action, it is the failure to disclose assets on her bankruptcy schedule that
23       provides the most compelling reason to bar the prosecution of her claims.

24 DEFENDANT'S MOTION FOR SUMMARY                    BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
   JUDGMENT - 22                                            720 OLIVE WAY, SUITE 1201
25                                                       SEATTLE, WASHINGTON 98101-1801
                                                        206/622-5306 FAX: 206/622-0354

1      These facts in this case require judicial estoppel of this action, precluding
2    Plaintiff's further pursuit of her FDCPA and pendant state law claims. Id. at p.4.

3    The court granted Columbia's motion dismissing all of the plaintiff's claims. A true and

4    correct copy of the court's decision is attached.

5        Here, Green filed her bankruptcy petition a mere two weeks after filing the

6    complaint against BWM.  Green neither listed her claim in her Statement of Personal

7    Property, nor in her schedule of exemptions. No action was taken to amend the pleadings

8    until after BWM contacted Green's bankruptcy counsel and inquired as to why the claim

9    against it was not scheduled. See Affidavit of Krista L. White.  Her bankruptcy counsel

10   stated that she knew nothing about the claim. Having failed to schedule the claim initially,

11   Green is estopped to assert it in this action.

12       11.   Plaintiff Should Be Awarded Its Attorney's Fees And Cost.

13       Under 15 USC 1692k(a)(3), on a finding by the court that an action under this

14   section was brought in bad faith for the purpose of harassment, the court may award to the

15   defendant attorney's fees reasonable in relation to the work expended and costs. Before

16   filing this lawsuit, Green's attorneys were aware of the reason for the delay in pursuing the

17   collection action. Further, they had made similar claims in both the *LeClair v. Suttell* matter

18   and the *Allers-Petrus v. Columbia Recovery Group*, which were decided against them.

19       The complaint was filed here with no reasonable basis to believe a violation of the

20   FDCPA had occurred, for the sole purpose of coercing a favorable settlement paying the

21   majority of the sums obtained from BWM to Green's attorneys, not to Green. From the

22   bankruptcy schedules, it is apparent that Green views the maximum value of her claim to

23   be $1,000, and is not paying for FDCPA counsel – their compensation will be sought

24   DEFENDANT'S MOTION FOR SUMMARY          BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
     JUDGMENT - 23                                      720 OLIVE WAY, SUITE 1201
25                                                    SEATTLE, WASHINGTON 98101-1801
                                                   206/622-5306 FAX: 206/622-0354

1  exclusively from BWM. Weisberg and Meyers was not employed as Green's attorneys as

2  required by 11 USC §327, nor is it listed as a creditor of the debtor. This case is merely a

3  vehicle for Weisberg and Meyers to earn fees from opposing litigants, counting upon

4  settlements to extract the fees with little or no effort.

5        The deposition testimony of Green confirms that Green was not misled or damaged

6  by any act of BWM which is the subject of Green's amended complaint. Just prior to her

7  deposition, Green sent a letter directly to BWM, stating that she did not intend to pursue

8  the litigation. She later reconsidered her decision to dismiss the case, after conferring with

9  Weisberg and Meyers. By testifying in direct contradiction to her amended complaint –

10  which asserted claims against BWM based upon the content of letters Green said she never

11  received – it is clear that the claims described in the amended complaint are the

12  imagination and construction of Green's attorneys, not descriptions of unfair, deceptive and

13  harassing collection practices engaged in by BWM. Established law and absence of

14  testimonial support for Green's allegations establishes BWM's bad faith claim.

15

16                                **CONCLUSION**

17        Green's amended complaint against BWM should be dismissed. BWM should be

18  awarded its attorney's fees and costs under 15 USC 1962k.

19        Dated this 20th day of January, 2011.

20                                BISHOP, WHITE, MARSHALL & WEIBEL, P.S.

21                                /s/ Krista L. White
                                   Krista L. White, WSBA #8612
22                                 Attorney for Defendant

23

24  DEFENDANT'S MOTION FOR SUMMARY          BISHOP, WHITE, MARSHALL & WEIBEL, P.S.
    JUDGMENT - 24                                     720 OLIVE WAY, SUITE 1201
25                                             SEATTLE, WASHINGTON 98101-1801
                                               206/622-5306 FAX: 206/622-0354

CASES

Slip Copy, 2010 WL 417418 (W.D.Wash.)

Motions, Pleadings and Filings
Judges and Attorneys
Only the Westlaw citation is currently available.

United States District Court, W.D. Washington,
at Seattle.
Wendy LeCLAIR, Plaintiff,
v.
SUTTELL AND ASSOCIATES, P.S., Defendant.

No. C09-1047-JCC.
Jan. 29, 2010.

Aaron Radbil, Alex Weisberg, Weisberg & Meyers, LLC, Cooper City, FL, Jon N. Robbins, Weisberg & Meyers, Loon Lake, WA, for Plaintiff.

Jeffrey T. Kestle, Gardner Bond Trabolsi PLLC, John Forsythe Jenkel, Forsberg & Umlauf, Seattle, WA, for Defendant.

ORDER

JOHN C. COUGHENOUR, District Judge.

*1 This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. No. 19), Plaintiff's Response (Dkt. No. 25), Defendant's Reply (Dkt. No. 28), and Plaintiff's Supplemental Filing [FN1] (Dkt. No. 27). This matter also comes before the Court on Plaintiff's Motion for Leave to File Amended Complaint (Dkt. No. 36), Defendant's Response ( Dkt. No. 39), and Plaintiff's Reply (Dkt. No. 41). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the Motion to Amend (Dkt. No. 36), and GRANTS IN PART the Motion for Summary Judgment (Dkt. No. 19), for the reasons explained herein.

> FN1. Plaintiff filed supplemental authority with the Court to address an argument that was raised for the first time in Defendant's reply brief. The supplemental authority consists of a single Order by Judge Burgess, which was decided on December 3, 2009, four days after Plaintiff's Response was due. (Dkt. No. 32-2.) The Court finds good cause to consider this additional material. Thus, the Motion for Leave to File Supplemental Authority (Dkt. No. 32) is GRANTED.

## I. BACKGROUND

This case investigates the tactics that a debt collector may lawfully employ to pressure a debtor to pay. Sometime in 2002 or 2003, Plaintiff Wendy LeClair defaulted on a revolving credit account with Spiegel Card Processing, CE, leaving $4984.42 unpaid. (LeClair Affidavit (Dkt. No. 27-2 at 3); see also Hammer Decl. (Dkt. No. 20 at 2).) The debt was subsequently sold to Midland Funding, LLC, which hired the law firm of Suttell & Associates, P.S. to collect it. ( See Mot. 2 (Dkt. No. 19).) For reasons that remain unclear, neither Midland nor Suttell & Associates made any action to collect the debt for six years.

On May 15, 2008, Suttell & Associates claims that it sent LeClair a demand letter for the amount owing. ( See Dkt. No. 20 at 2, 6, 7.) LeClair claims, in an affidavit, that she never received the letter, and it is undisputed that she never responded. (LeClair Affidavit (Dkt No. 27-2 at 4); Mot. 2 (Dkt. No. 19).) More than three months later, on August 26, 2008, Suttell & Associates served Plaintiff with a Summons and Complaint for a lawsuit in King County Superior Court on behalf of its client, Midland. (Mot. 2 (Dkt. No. 19); Resp. 1 (Dkt. No. 25).) The Summons declared: "A lawsuit has been started against you in the above-entitled court by the above-named plaintiff. [Midland's] claim is stated in the

written complaint, a copy of which is served upon you with this Summons." (Resp. 2 (Dkt. No. 25); King County Summons (Dkt. No. 20 at 9).) The Summons also informed LeClair of her ability to demand that the case be filed, and warned her of the danger of default if she did not respond within twenty days of service. (King County Summons (Dkt. No. 20 at 9).) However, mysteriously, Suttell & Associates did not actually file the Complaint in King County Superior Court for more than seven months, until April 9, 2009. (Hammer Decl. 3 (Dkt. No. 20).) Apparently, LeClair phoned the court after receiving the summons, and learned that no actual suit had been filed at the time she received service of process. (4/21/09 Letter (Dkt. No. 25-14 at 2).) LeClair did not demand that the summons and complaint be filed.

Plaintiff responded to the service of process by phoning and, soon afterwards, writing a letter to Defendant. (Resp. 2 (Dkt. No. 25).) In a letter dated September 4, 2008, LeClair indicated that, although she did not dispute the amount owed, she believed that the statute of limitations had run on the debt. (9/4/08 Letter (Dkt. No. 20 at 17).) "My understanding," LeClair wrote, "is that in Washington State the SOL is 3 years on this type of debt. Based on that information, it would appear that the SOL has expired on this matter.... If, however, you provide me with documented proof that the SOL has not expired in this matter, or if my understanding of the statute is incorrect, I would be more than happy to discuss payment." ( *Id.* ) She set a deadline of September 24, 2008, indicating that, if she had not heard back from Suttell & Associates by that date, she would assume that the statute of limitations had run. ( *Id.* )

*2 Again, a strangely lengthy amount of time passed. On March 13, 2009, Suttell & Associates finally replied to LeClair, enclosing an affidavit by Midland and additional information that it claimed established that the date of the last payment on the Spiegel account was May 8, 2003. (3/13/09 Letter (Dkt. No. 20 at 19).) It also asserted that Washington State has a six year statute of limitations, which it believed extended the deadline for suit until May 8, 2009. ( *Id.* ) On April 18, LeClair responded again, protesting the amount of time that had passed since the service of summons and her previous letter, and asserting that she needed to get confirmation from her bank that a payment had indeed been made to the Spiegel account in 2003. (4/13/09 Letter (Dkt. No. 25-11 at 2).) Plaintiff did, in fact, contact her bank, and continues to assert that she made no payment to the Spiegel account after September of 2002. ( *See* LeClair Affidavit (Dkt. No. 27-2 at 3).)

Suttell & Associates apparently did not respond to this letter; instead, more than seven months after the date of service of process, it filed its Complaint in King County Superior Court-and almost immediately afterward (a mere five days later, on April 13, 2009) moved for default. (Dkt. No. 25-13 at 2-3; King County Compl. (Dkt. No. 20 at 11).) LeClair, instead of retaining counsel or appearing in the action, wrote Judge Hill a letter on April 21, 2009, "protesting" Midland's request for a default judgment, and reciting, in essence, the saga of this debt. (4/21/09 Letter (Dkt. No. 25-14 at 2).) She contested the limitations issue, questioned the validity of the summons, and requested that a default judgment not be entered. ( *Id.* ) She did not, however, ever appear formally in the action, and the King County Superior Court eventually rendered a default judgment. (King County Default (Dkt. No. 30 at 5).) On May 12, 2009, LeClair mailed Suttell & Associates a check for the full amount of the default (and the full amount of the original debt): $4984.42. (5/12/09 Letter (Dkt. No. 21 at 11).)

LeClair filed the instant lawsuit in this federal court two months after payment, alleging that Suttell & Associates violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* , in its actions collecting the debt. Suttell & Associates now moves for summary judgment on what, until recently, amounted to all of LeClair's claims.

## II. MOTION TO AMEND
On January 12, 2010, Plaintiff filed a motion to amend her complaint, adding a number of claims. (Dkt. No. 36.) One of these claims concerns the running of the statute of limitations, which Plaintiff had argued in response to the motion for summary judgment, but had not at that point pleaded. There are a number of other claims not alluded to in any moving paper.

The Court is aware that the pleading amendment deadline passed on January 8, 2010. However, the decision to allow or decline leave to amend is a matter for the discretion of the district court. *See Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir.1986)* (reviewing

for abuse of discretion). The deadline had only passed four days beforehand-and two of those days occurred over a weekend. For reasons of judicial economy and fairness, the Court finds good cause to allow the amendment. See FED. R. CIV. P. 15(a)(2), 16(b); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir.1992). The Court hereby GRANTS the Motion. (Dkt. No. 36). The Motion for Summary Judgment (Dkt. No. 19) will be treated as a motion for partial summary judgment, and will only conclusively determine the issues raised in Defendant's motion, leaving the rest for further proceedings.

## III. STANDARD OF REVIEW

*3 Under Federal Rule of Civil Procedure 56(c), the Court shall grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Summary judgment is appropriate against a nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That is, after the movant has carried its burden of demonstrating that there is no genuine issue of material fact, the burden shifts to the nonmovant, who must present a quantum of evidence such "that a reasonable jury could return a verdict" in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, the Court must view the facts in the light most favorable to the non-moving party and draw reasonable inferences in favor of that party. Scheuring v. Traylor Bros., Inc., 476 F.3d 781, 784 (9th Cir.2007).

## IV. DISCUSSION

The Fair Debt Collection Practices Act is a federal consumer protection statute. It prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Like other statutes of its kind, the FDCPA strikes a cautious balance between protecting the public and allowing debt collectors reasonable leeway to conduct legitimate business. See, e.g., S.Rep. No. 95-382, at 1 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696, 1698-99 (the statute prohibits "improper conduct" and dishonest collection practices "without imposing unnecessary restrictions on ethical debt collectors"); see also Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1169-70 (9th Cir.2006). The statute itself contains a list of proscribed practices; this list is non-exhaustive. See Clark, 460 F.3d at 1170 n. 4. Courts interpret the FDCPA in accordance with the "least sophisticated consumer" standard, ensuring that the "FDCPA protects all consumers, the gullible as well as the shrewd ... the ignorant, the unthinking and the credulous." Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1171 (9th Cir.2006); see also Swanson v. S. Or. Credit Serv., 869 F.2d 1222 (9th Cir.1988).

### A. Initial Disclosures: 15 U.S.C. § 1692g

15 U.S.C. § 1692g(a) requires a debt collector to send to the consumer, in its initial communication with the debtor or within five days afterward, a written notice containing a number of required items (including, for example, the amount of the debt and the name of the creditor). Defendant produced evidence that it sent the required disclosures.[FN2] Plaintiff attempts to resist summary judgment by noting that Defendant has not produced any evidence that she received the required initial disclosures, and disputing the type and quantity of the evidence that Defendant produced. (Resp. 24 (Dkt. No. 25).)

> FN2. Defendant produced a form letter with blank fields that contains the required initial disclosures (Dkt. No. 20 at 6), a log of communications with Plaintiff indicating that the demand letter had been sent, ( Id. at 7), and statements in two declarations (although not, the Court observes, notarized affidavits) averring that the required disclosures had been mailed on May 15, 2008 ( Id. at 1-2, Dkt. No. 31 at 1-5).

*4 Plaintiff's arguments are foreclosed by Ninth Circuit caselaw. Subsection 1692g only requires that the disclosures be timely sent; it says nothing about the consumer's receipt of those disclosures. See 15 U.S.C. § 1692g(a). Consistent with this plain language, the Ninth Circuit has interpreted the

statute only to require evidence that the notice has been sent. *Mahon v. Credit Bureau of Placer County Inc.,* 171 F.3d 1197, 1201-02 (9th Cir. 1999) ("We hold that section 1692g(a) requires only that a Notice be 'sent' by a debt collector. A debt collector need not establish actual receipt by the debtor.") Moreover, *Defendant's evidence regarding its standard business practices is similar to that produced in Mahon,* in which the debt collector demonstrated that the notice had been sent with reference to the ordinary practices in that office. *See id.* at 1202. There is no genuine dispute of material fact on this issue, and summary judgment is therefore GRANTED as to it. *Anderson,* 477 U.S. at 248.

## B. Timing of Filing, Suit, and Default: 15 U.S.C. § 1692e(5)

In her complaint, LeClair asserts that Suttell & Associates threatened an action that could not lawfully be taken, violating 15 U.S.C. § 1692e(5), [FN3] by filing the complaint more than seven months after serving her with process, and moving for default five days after the tardy filing. (Compl. 3 (Dkt. No. 1).) [FN4] In essence, Plaintiff argues that Washington law requires a litigant in state court to file her complaint within ninety days of service, and that, therefore, Defendant filed and then moved for default in a case that was never actually commenced-an "action that could not lawfully be taken." ( *Id.;* see also Resp. 15-19 (Dkt. No. 25).)

> FN3. Section 1692e is a non-exclusive list of specifically proscribed debt collection practices. Subsection 1692e(5) prohibits a debt collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken."

> FN4. The Court notes that Plaintiff only argues, in response to Defendant's summary judgment motion, that filing for default-not filing the suit itself-violated § 1692e(5). ( *Compare* Dkt. No. 25 with Dkt. No. 1.) The Court considers both arguments, however, because they are encompassed by the same reasoning, and because Defendant so moved.

Plaintiff's theory is as follows. Washington Superior Court Civil Rule 3 provides:

[A] civil action is commenced by service of a copy of a summons together with a copy of a complaint, as provided in rule 4 or by filing a complaint. Upon written demand by any other party, the plaintiff instituting the action shall pay the filing fee and file the summons and complaint within 14 days after service of the demand or the service shall be void. An action shall not be deemed commenced for the purpose of tolling any statute of limitations except as provided in RCW 4.16.170.

Washington Revised Code Section 4.16.170 provides:

For the purpose of tolling any statute of limitations an action shall be deemed commenced when the complaint is filed or summons is served whichever occurs first.... If the action is commenced by service on one or more of the defendants ... the plaintiff shall file the summons and complaint within ninety days from the date of service. If following service, the complaint is not so filed, or following filing, service is not so made, the action shall be deemed to not have been commenced for purposes of tolling the statute of limitations.

Plaintiff contends that these two statutes impose a duty upon all litigants to file the summons and complaint within ninety days, or the suit is a "nullity." (Resp. 15-19 (Dkt. No. 25).)

*\*5 Defendant's behavior, in serving Plaintiff seven months before filing the summons and complaint in state court, and then moving for default a scant five days after filing, is deeply troubling. Nonetheless, the Court finds the conclusion inescapable that this particular theory simply misunderstands Washington procedural law. All of the cases cited by Plaintiff-and the language of the law itself, bookended by two very clear limiting clauses-indicate that the ninety-day window only applies to tolling the applicable statute of limitations, not to the validity of the suit itself.

The Washington Supreme Court explained that section 4.16.170 "controls the tolling of the period of limitations while [Civil Rule 3] governs the commencement of actions." *Nearing v. Golden State Foods Corp.*, 114 Wash.2d 817, 792 P.2d 500, 503 (Wash.1990). The statute deals "exclusively" with tolling; it does not impose upon state litigants a free-ranging obligation to file within ninety days of service. *Id.* at 502. Plaintiff repeatedly cites language (out of context) from *Citizens Interested in the Transfusion of Yesteryear v. Board of Regents*, 86 Wash.2d 323, 544 P.2d 740, 744 (Wash.1976), overruled in part by *Jones v. Stebbins*, 122 Wash.2d 471, 860 P.2d 1009, 1011-12 (Wash.1993), that "[t]he lawsuit became a nullity" without filing within ninety days, but the case merely held that failure to file the summons and complaint within the statutory tolling window meant that the service did not toll the limitations period. No case cited by Plaintiff stands for the proposition that a defendant must file the summons and complaint within ninety days, else *service*-which begins the lawsuit-is ineffectual. Washington court rules, including the text of Rule 3(a) itself, belie this conclusion. FN5 The only effect of Defendant's failure to file within ninety days was that the statute of limitations was not tolled.

> FN5. Rule 3(a) specifically contemplates non-simultaneous service and filing by allowing a defendant who has been served to demand that the suit be filed within fourteen days. WASH. SUP.CT. CIV. R. 3(a). This is, in essence, a safety valve for a state court defendant, who otherwise would not be able to appear and resist default. This safety valve appears on the very first page of the summons that LeClair received. (King County Summons (Dkt. No. 25 at 2).) It is apparent that Plaintiff made no such demand here. (Mot. 7 (Dkt. No. 19).) No other law or rule in Washington State requires simultaneous filing of the summons and complaint, or provides that the time for defense runs from the date of service, not the date of filing. The default in this case was faithful to the letter of the rule, if not to the spirit of fair play. *See* WASH. SUP.CT. CIV.. R. 3(a), 4(d)(1), 12(a) (2).

Although the Court finds the practice to be either brazenly tactical or slovenly, it was simply not unlawful under Washington state court rules to wait seven months to file process, and move five days after filing for default. Therefore, Suttell & Associates did not "threaten to take an action that could not lawfully be taken." 15 U.S.C. § 1692e(5). The Court thus GRANTS the Motion for Summary Judgment as to this issue. FN6

> FN6. This holding is narrow. It does not affect Plaintiff's ability to pursue claims that the practice of serving an unfiled complaint, waiting seven months to file the complaint, and then moving for default a mere five days after filing, was unfair or unconscionable under 15 U.S.C. § 1692f. ( See Am. Compl. 3 (Dkt. No. 36-2).)

## C. False Representation: 15 U.S.C. § 1692e(9)

LeClair asserts that service of unfiled process was a written communication that falsely represented to be authorized by a court of Washington.State, in violation of 15 U.S.C. § 1692e(9). (Compl. 3 (Dkt. No. 1).) Section 1692(e)(9) proscribes "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval."

In this Circuit, the standard for discerning whether a statement is materially false or misleading was announced in *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1229 (9th Cir.1989). If the least sophisticated debtor would "likely be misled" by a communication from a debt collector, the debt collector has violated the Act. *Id.* at 1225.

**\*6** The Court cannot find that LeClair was likely misled to believe that the service of process was authorized by King County Superior Court. In the first place, nothing in the document was false. The summons merely states that a law suit has been *started*, which, as discussed above, it had: service

begins a lawsuit under Washington Superior Court Civil Rule 3. More importantly, the Court finds that reading the first page of the summons would have provided Plaintiff with adequate information about the status of her suit. The Summons says, in no uncertain terms, "You may demand that the plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the plaintiff." (King County Summons (Dkt. No. 20 at 9).) Upon reading this sentence, even the least sophisticated consumer would likely understand that the lawsuit had not yet been filed, and would likely therefore understand that the state court had not issued it.

Finally, the Court is unwilling to hold that service of an unfiled complaint violates the FDCPA, because the ramifications of this rule would require debt collectors *always* to file first and then serve. This is simply too sweeping of a proposition for the Court to countenance.[FN7] The document was not deceptive, and therefore did not violate Section 1692(e)(9). *Compare* Johnson v. Eaton, 873 F.Supp. 1019 (M.D.La.1995).

> FN7. There are legitimate reasons to serve unfiled complaints. For instance, a debt collector may wish to portray to a consumer honestly that it may file the summons and complaint if the debtor refuses to respond through less formal means. This may, in some cases, lead to the conservation of judicial resources and filing fees.

## D. Filing a Suit Barred by the Statute of Limitations: 15 U.S.C. § 1692e(5) [FN8]

> FN8. Defendant argues that this argument is precluded by collateral estoppel, because Plaintiff had an opportunity to litigate it in state court. (Reply 2 (Dkt. No. 28).) But that case went to default judgment before ever having been considered on the merits. Defaults are not generally considered to be the type of final judgment from *which* preclusion operates. *See* Joseph Druther v. Dean William Hamilton & Fairway Collections, LLC, C09-5503-FDB (W.D.Wash. Dec. 3, 2009); ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 11.2.4 at 749; RESTATEMENT (SECOND) OF JUDGMENTS § 28, cmt. e ("An issue is not actually litigated if the defendant might have interposed it as an *affirmative defense but failed to do so … In the case of a judgment entered by … default, none of the issues is actually litigated.") The statute of limitations argument is not precluded.

In response to Defendant's motion for summary judgment, LeClair asserts that Suttell & Associates threatened to take action that it could not legally take by filing an action that was barred by the applicable statute of limitations. (Resp. 9 (Dkt. No. 25).)

This issue is not properly before the Court, because it was raised for the first time in Plaintiff's response for summary judgment, and was only included in the most recent Amended Complaint. More importantly, there is a genuine dispute of material fact: the date of LeClair's last payment on the Spiegel account. LeClair insists that she did not make a payment after September 2002; this is corroborated by her sworn affidavit and by her credit report, which indicates that the Spiegel account was closed as of that date. (LeClair Affidavit (Dkt No. 27-2 at 2); LeClair Credit Report 5 (Dkt. No. 25-2).) Defendant, however, produced a document from Spiegel that indicates a payment on LeClair's account on May 7, 2003. (Dkt. No. 25-8 at 2).) *The evidence is conflicting and cannot be resolved on summary judgment;* moreover, this fact could be material to determine whether the statute of limitations had run when Suttell & Associates filed its lawsuit.[FN9]

> FN9. Even assuming that a six-year statute of limitations applies, by failing to file the lawsuit within ninety days of service, the statute of limitations was *not tolled until the date of filing:* April 9, 2009. (King County Compl. (Dkt. No. 20 at 11)); *see also* WASH. REV. CODE § 4.16.170. Assuming *arguendo* that the date of last payment begins the limitations period, the suit was time-barred if the limitations period began in September 2002, and (barely) not time-barred if the period began to run in May of 2003. The issues

of (1) when the limitations period begins generally in debt-collection cases, (2) whether a three- or six-year limitations period applies, and (3) when the limitations period began to run here, are not resolved by this Order.

## E. State Law Claims

Plaintiff failed to respond to Defendant's argument regarding its state law claims. Under most circumstances, the Court would take this to be a concession that the argument has merit. Local Rules W.D. Wash. CR 7(b)(2). Nonetheless, the Court cannot sustain Defendant's theory that Washington state law exempts Suttell & Associates from liability. Defendant states that the Washington Collection Agency Act does not apply to Suttell & Associates because the statute excludes the activities of "any person ... directly related to the operations of a business other than a collection agency ... such as ... lawyers." WASH. REV.CODE 19.16 .100(3)(c). Defendant seems to be arguing that its status as a law firm grants it total immunity. But Suttell & Associates here was acting as a collection agency for Midland; it was not, for example, collecting debts owed to it by a client for legal services. *Semper v. JBC Legal Group*, C04-2240-RSL, 2005 WL 2172377, at *3 (W.D.Wash. Sept.6, 2005). Defendant's activities here were not "directly related to the operations of a business other than a collection agency," and thus the state law claims stand.

## V. FINAL OBSERVATIONS

*7 The Court is dismayed by the disorderly prosecution and defense of this action. Issues were raised for the first time in response and reply briefs. The amendment deadline passed without event-only to have third parties and claims added four days later. Both parties have repeatedly cited state law where only federal law is applicable. Plaintiff cited one case that had been overruled. Defendants moved for summary judgment with non-notarized declarations. The Motion for Leave to Amend was improperly noted for consideration, and Defendant filed its response to this motion on an apparently arbitrarily chosen date. The Court's consideration of the merits of this matter over a smattering of procedural defects has been a generous concession, and the parties should not expect such leniency again.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to File Supplemental Authority (Dkt. No. 32) is GRANTED. Plaintiff's Motion to Amend (Dkt. No. 36) is GRANTED. Defendant's Motion for Summary Judgment (Dkt. No. 19) is GRANTED IN PART and DENIED IN PART, consistent with this Order.

W.D.Wash.,2010.
LeClair v. Suttell and Associates, P.S.
Slip Copy, 2010 WL 417418 (W.D.Wash.)

Motions, Pleadings and Filings (Back to top)

- 2010 WL 2214808 (Trial Motion, Memorandum and Affidavit) Defendant's Motion for Reconsideration of January 29, 2010, Order (Feb. 12, 2010) 🖹 Original Image of this Document (PDF)
- 2010 WL 2214803 (Trial Pleading) Plaintiff's First Amended Complaint (Feb. 5, 2010) 🖹 Original Image of this Document (PDF)
- 2009 WL 5019502 (Trial Filing) Joint Status Report and Discovery Plan (Oct. 16, 2009) 🖹 Original Image of this Document (PDF)
- 2009 WL 3225735 (Trial Pleading) Complaint (Jul. 23, 2009) 🖹 Original Image of this Document (PDF)
- 2:09cv01047 (Docket) (Jul. 23, 2009)

Judges and Attorneys (Back to top)

Judges | Attorneys

Judges

- **Coughenour, Hon. John C.**
United States District Court, Western Washington
Washington
Litigation History Report | Judicial Motion Report | Judicial Reversal Report | Judicial Expert Challenge Report | Profiler

---

Attorneys

Attorneys for Defendant

- **Jenkel., John F.**
Seattle, Washington
Litigation History Report | Profiler

- **Kestle, Jeffrey T**
Unknown State
Litigation History Report | Profiler

Attorneys for Plaintiff

- **Radbll, Aaron D.**
Cooper City, Florida
Litigation History Report | Profiler

- **Robbins, Jon N.**
San Ramon, California
Litigation History Report | Profiler

- **Weisberg, Alexander Daniel**
Cooper City, Florida
Litigation History Report | Profiler

END OF DOCUMENT

(c) 2010 Thomson Reuters. No Claim to Orig. US Gov. Works,

Not Reported in F.Supp.2d, 2009 WL 799676 (W.D.Wash.)

Motions, Pleadings and Filings
Judges and Attorneys
Only the Westlaw citation is currently available.

United States District Court, W.D. Washington,
at Tacoma.
Shanna ALLERS-PETRUS, Plaintiff,
v.
COLUMBIA RECOVERY GROUP, LLC, Defendant.

No. C08-5533 FDB.
March 24, 2009.


West KeySummary


⇐**51** Bankruptcy
　⇐**51II** Courts; Proceedings in General
　　⇐**51II(B)** Actions and Proceedings in General
　　　⇐**51 k2154** Rights of Action by or on Behalf of Trustee or Debtor
　　　　⇐**51 k2154.1** k. In general; standing. Most Cited Cases

⇐**156** Estoppel
　⇐**156II** Equitable Estoppel
　　⇐**156III(B)** Grounds of Estoppel
　　　⇐**156k68** Claim or Position in Judicial Proceedings
　　　　⇐**156k68(2)** k. Claim inconsistent with previous claim or position in general. Most Cited
Cases

A plaintiff who took inconsistent positions in a bankruptcy petition was not entitled to bring a Fair
Debt Collection Practices Act (FDCPA) claim against a creditor. The plaintiff filed a bankruptcy petition
with full knowledge that she had a FDCPA claim against the creditor, but failed to disclose that in the
list of assets in her bankruptcy petition. Furthermore, plaintiff did not seek to amend her schedule of
assets until after her bankruptcy plan had been confirmed and the creditor had filed a motion for
summary judgment in a subsequent lawsuit. Thus, the doctrine of judicial estoppel barred her action
against the creditor. Fair Debt Collection Practices Act, § 802, 15 U.S.C.A. § 1692.

Alex Weisberg, Weisberg & Meyers, LLC, Cooper City, FL, Jon N. Robbins, Jon N. Robbins Weisberg &
Meyers, Loon Lake, WA, for Plaintiff.

Kimberlee Walker-Olsen, Luke Casteel & Olsen, Lynnwood, WA, for Defendant.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
FRANKLIN D. BURGESS, District Judge.
　***1** This matter comes before the Court on Defendant Columbia Recovery Group, LLC's motion for
summary judgment pursuant to the doctrine of judicial estoppel. The Court, having reviewed the
motion, response and thereto, is fully informed and hereby grants the motion for summary judgment
and dismisses the action for the reasons that follow.

### Introduction and Background
　Plaintiff Shanna Allers-Petrus filed this Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.
(FDCPA) action an September 9, 2008. Prior to filing this action, Plaintiff commenced Chapter 13

bankruptcy proceedings. Cause No. 08-15057 TTG. The petition was filed August 8, 2008 and the plan was confirmed on November 9, 2008. Plaintiff did not list the FDCPA claim in her bankruptcy schedule of assets.

In response to the FDCPA suit, Defendant Columbia Recovery Group, LLC (Columbia) moved for *summary judgment* asserting that Plaintiff is judicially estopped from pursuing this claim which she failed to list in bankruptcy. Defendant has set forth uncontested evidence, (i .e. June 19, 2008 demand letter and July 22, 2008 demand letter), that Plaintiff was aware of her FDCPA cause of action prior to filing her bankruptcy petition. In apparent response to Defendant's motion for summary judgment, Plaintiff amended her Chapter 13 bankruptcy schedule to include the FDCPA claim. Plaintiff lists the claim as exempt from creditors. Columbia, a creditor in the bankruptcy proceedings, has objected to the amended schedule as containing false and misleading information concerning the time Allers-Petrus knew of the claim and the amount of damages. The objection to the amended schedule is pending before the bankruptcy court.

### Summary Judgement Standard

Rule 56 of the *Federal Rules of Civil Procedure* provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there-are-no-genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A "genuine" issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)*.

In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the nonmoving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)*; see also *Nissan Fire & Marine Ins. Co. v. Fritz Cos. Inc., 210 F.3d 1099 (9th Cir.2000)*. Once the movant has made this showing, the burden shifts to the party opposing summary judgment to "designate specific facts showing there is a genuine issue for trial." *Celotex*, at 323. Generally, summary judgment should be denied where credibility bears on an issue of material fact. See, *SEC v. Koracorp Indust., 575 F.2d 692, 699 (9th Cir.1978)*. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, at 255. The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. See, *Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 111 S.Ct. 2419, 115 L.Ed.2d 447, 520 (1992)*. The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might find for the non-moving party. *T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir.1987)*. In such a case, summary judgment is inappropriate. *Anderson*, at 248.

### Judicial Estoppel

**\*2** Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later taking to their benefit a clearly inconsistent position. See *Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600-601 (9th Cir.1996)*. Judicial estoppel may be invoked not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings," and to "protect against a litigant playing fast and loose with the courts." *Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.1990)*.

The court considers three factors in deciding whether to exercise its discretion in applying the doctrine of judicial estoppel in a particular case. *New Hampshire v. Maine, 532 U.S. 742, 750-51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)*; *Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782-83 (9th Cir.2001)*. "First, a party's later position must be 'clearly inconsistent' with its earlier position." *Hamilton*, at 782. Second, the party must have "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.' " *Id.* Third, the court must determine "whether the party seeking to assert an inconsistent position would

derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."
*Id.* at 783.

The Ninth Circuit has applied judicial estoppel in the bankruptcy context to prevent plaintiffs from asserting relevant claims that they failed to disclose during bankruptcy proceedings. *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 784 (9th Cir.2001); *Hay v. First Interstate Bank of Kalispell,* 978 F.2d 555 (9th Cir .1992). "In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Hamilton,* at 783 (citing *Hay,* at 557).

Allers-Petrus clearly asserted inconsistent positions in the two proceedings. She failed to list the FDCPA claim against Columbia as an asset on her bankruptcy schedule and she later brought this suit against Columbia on the same claim. Allers-Petrus claims, nonetheless, that Columbia suffered no harm due to the fact she has filed an amended personal property schedule with the bankruptcy court in which she lists the FDCPA claim. Plaintiff argues that the bankruptcy proceeding remains open and the court has not yet accepted an earlier inconsistent position. Thus, any prior inconsistent position has since been nullified and made moot.

The Court disagrees. The bankruptcy court need not discharge debts before the judicial acceptance prong is satisfied. *Hamilton,* at 784. The court in *Hamilton* applied judicial estoppel to the claim despite the bankruptcy court's vacation of the prior discharge. The court noted that "[t]he bankruptcy court may "accept" the debtor's assertions by relying on the debtor's nondisclosure of potential claims in many other ways. See, e.g., *In re Coastal Plains,* 179 F.3d at 210 (finding that judicial acceptance was satisfied when the bankruptcy court lifted a stay based in part on the debtor's nondisclosure in its bankruptcy schedules and in a lift-stay stipulation); *Donaldson v. Bernstein,* 104 F.3d 547, 555-56 (3rd Cir.1997) (holding that judicial acceptance was satisfied when the court approved the debtor's plan of reorganization)." *Hamilton,* at 784. It was failure to disclose assets on plaintiff's bankruptcy schedules that provided the most compelling reason to bar plaintiff from prosecuting claims:

*3 This court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts.... The rationale for ... decisions invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.

*Hamilton,* at 782, 785 (citations omitted).

The rationale applies here. There are no genuine issues of material fact. Plaintiff Allers-Petrus filed her bankruptcy petition with full knowledge that she had a FDCPA claim against Columbia. Plaintiff did not seek to amend her schedule of assets until after her plan had been confirmed and Columbia filed the instant motion for summary judgment in Plaintiff's subsequent lawsuit. Although the Court finds all three prongs satisfied in this action, it is the failure to disclose assets on her bankruptcy schedule that provides the most compelling reason to bar the prosecution of her claims.

These factors require judicial estoppel of this action, precluding Plaintiff's further pursuit of her FDCPA and pendant state law claims. The Court does not reach the merits of Plaintiff's FDCPA action. Nor does the court consider whether Plaintiff's amended personal property schedule and objections thereto warrants any particular action by bankruptcy court for the purpose of releasing or pursuing these claims on behalf of Plaintiff's creditors.

**Conclusion**

For the forgoing reasons,

**IT IS ORDERED:**

Defendant's Motion for Summary Judgment [Dkt. # 16] is **GRANTED** dismissing all claims of Plaintiff.

W.D.Wash.,2009.
Allers-Petrus v. Columbia Recovery Group, LLC
Not Reported in F.Supp.2d, 2009 WL 799676 (W.D.Wash.)

Motions, Pleadings and Filings (Back to top)

• 2009 WL 5072459 (Trial Motion, Memorandum and Affidavit) Response to Defendant's Motion for Summary Judgment (Mar. 2, 2009) 📄 Original Image of this Document with Appendix (PDF)
• 2009 WL 5072458 (Trial Motion, Memorandum and Affidavit) Defendant's Motion for Summary Judgment (Feb. 5, 2009) 📄 Original Image of this Document (PDF)
• 2009 WL 5072457 (Trial Filing) Joint Status Report (Jan. 8, 2009) 📄 Original Image of this Document (PDF)
• 3:08cv05533 (Docket) (Sep. 4, 2008)

Judges and Attorneys (Back to top)

Judges | Attorneys

Judges

• **Burgess, Hon. Franklin D.**
United States District Court, Western Washington
Washington
Litigation History Report | Judicial Motion Report | Judicial Reversal Report | Profiler

Attorneys

Attorneys for Plaintiff
• **Robbins, Jon N.**
San Ramon, California
Litigation History Report | Profiler

• **Weisberg, Alexander Daniel**
Cooper City, Florida
Litigation History Report | Profiler

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.