THE HONORABLE BENJAMIN H. SETTLE

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| **THERISA GREEN**, | ) Case No. 3:10-CV-05206-BHS |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) **PLAINTIFF'S RESPONSE TO** |
| vs. | ) **DEFENDANT'S MOTION FOR** |
| | ) **SUMMARY JUDGMENT** |
| **BISHOP, WHITE & MARSHALL, P.S.** | ) |
| | ) NOTE ON MOTION CALENDAR: |
| Defendant. | ) FEBRUARY 11, 2011 |
| | ) |
| | ) |

Plaintiff, Therisa Green ("Ms. Green" or "Plaintiff"), by and through her counsel of record, Weisberg & Meyers, LLC, hereby submits her Response in opposition to the motion for summary judgment filed by Defendant, Bishop, White & Marshall, P.S. ("BWM" or "Defendant"). In support thereof, Plaintiff respectfully states as follows:

## I.     INTRODUCTION.

In this case, Defendant served Plaintiff with an unfiled summons and complaint to collect a debt. After taking four payments from Plaintiff, it suddenly ceased all communication with Plaintiff for almost a year. Thereafter, it suddenly served Plaintiff again with a different summons and complaint. Defendant gave Plaintiff no explanation for its unreasonable delay, nor did it explain why it commenced a second action to collect on the same debt, when its original action remained pending. Instead Plaintiff was left to guess at Defendant's intentions throughout

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

this time.  As explained below, Defendant's attempts to mislead, confuse, harass, and coerce Plaintiff into paying an alleged debt were unfair and violate the FDCPA and its Washington state law counterpart.

Further, genuine issues of material fact exist that preclude summary judgment on Plaintiff's claims.  Defendant violated 15 U.S.C. § 1692e(5) by threatening legal action that it did not intend to take when it served its first summons and complain on Plaintiff but never filed the same.  Defendant also violated § 1692e(5) by initiating two separate lawsuits under the same set of facts and for the same cause of action, when Washington law prohibits this.  Defendant violated 15 U.S.C. § 1692e(2)(A) by misrepresenting that it could sue Plaintiff twice for the same debt.  Defendant violated 15 U.S.C. § 1692e(10) by misleading Plaintiff into believing that it was no longer collecting the debt when it ceased all communication with Plaintiff for a year. Defendant violated 15 U.S.C. § 1692d by harassing Plaintiff with duplicative lawsuits. Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect a debt from Plaintiff, including agreeing to collect payments and then ceasing communication, as well as serving Plaintiff with two separate complaints for the same conduct.  Defendant violated RCW § 19.16.250(14) by representing that it was entitled to collect interest for the period of time that it sat on its hands and failed to prosecute its suit, when it could not because it failed to mitigate its damages.

## II.       STATEMENT OF FACTS.

On or about August 20, 2008, BWM served Ms. Green with a summons and complaint for monies allegedly due a creditor.  (Document 13-3).  BWM's August 20, 2008 complaint against Ms. Green reads in part:

> On or about November 03, 2006, defendants executed a PERSONAL CREDIT LINE AGREEMENT, payable to plaintiff.  A copy of said agreement which more fully sets forth defendant's account is attached hereto as EXHIBIT "A", and by this reference incorporated herein.  As a result of the terms and conditions of the

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

agreement, the defendants are hereby indebted to the plaintiff in the principal sum of $8,947.37, plus interest at the rate of 21.25% per annum on the unpaid balance.

(Document 36, p. 2, lines 12-13; Document 13-3).

The complaint had not been filed with the court and there was no case number on it.  (See Deposition of Plaintiff, attached to the Declaration of Craig Ehrlich at Exhibit A, at 28:7).  Ms. Green describes receiving the unfiled summons and complaint as follows:

> Well, when I first received the first summons, I was scared. I went pacing around my house. I didn't know what to do. I was basically freaking out. I was nervous. When I did call my mom and tell my mom about it, I started crying into the phone. I did not know if the first summons was real or not because I didn't know the laws. But what got me was that there was no case number on it at all so I did not know whether or not if it was real. . . . I never found out if a case had actually been filed after receiving the first summons.

(Exhibit A, at 28:1-12).

In fact, BWM never filed its August 20, 2008 complaint against Ms. Green.  (Document 11, p. 10, line 14).

Subsequent to receipt of BWM's August 20, 2008 complaint, Ms. Green contacted BWM "to make payment arrangements on the account."  (Document 36, p. 2, lines 13-14).   Ms. Green agreed to make payments of $275.00 on the 1st and 15th of the month beginning September 15, 2008.  (Document 34, p. 2, lines 3-5).  Ms. Green agreed to this, not because she was satisfied that she owed the debt, but out of fear provoked by Defendant's actions.  (Exhibit A, at 22:24-23:14).   When Ms. Green called BWM, its representative was "very verbally abusive" and "yelled" at Ms. Green that she "was going to lose everything."  (Exhibit A, at 18:18-21, 20:23-21:7).  And so Ms. Green felt she "had no choice" but to make payments.  (Exhibit A, at 18:3-10).  Ms. Green made four payments to Defendant.  (Document 36, p. 2, lines 20-21).  Although Defendant had agreed to withdraw payments from Defendant's account on the 1st and 15th of the month, without qualification, Defendant took a payment two days late on November 17th and as a result the payment did not clear.  (Document 34, ¶2).

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

During this time, there was not "any conversation with [Ms. Green] that would have told her what the status of the lawsuit was." (See Deposition of Krista White, attached to the Declaration of Craig Ehrlich at Exhibit B, at 60:5-16). Further, Defendant did not speak with Ms. Green, did not send her any correspondence, nor did it communicate with Ms. Green in any way regarding the missed payment. (Exhibit A, at 49:12-50:4). Apparently, Defendant called Ms. Green a couple of times but missed her, and did not leave any messages for her to let her know it had called. (See Exhibit B, at 79:6-10, 81:4-17). In fact, Defendant sent Ms. Green no correspondence of any sort until a year later, when it served her with a second summons and complaint on November 4, 2009. (See Exhibit B, at 84:25-85:12). Plaintiff was given no explanation whatsoever for the Defendant's year-long delay in collecting the account. (See Exhibit B, at 82:18-83:4, 83:23-84:19). Defendant "didn't have any communication with her during that time because [it] didn't deem it appropriate." (See Exhibit B, at 84:18-19). Because of this lengthy delay and unexplained cessation of contact, Ms. Green came to believe that Defendant was "bluffing" about filing a lawsuit against her. (See Exhibit A, at 47:8-20).

The second complaint was also unfiled when served, but was later filed on December 16, 2009. (See Exhibit B, at 85:10-13). Although a different summons and complaint than the first, the second is for the same cause of action, and based upon the same facts, as its already pending August 20, 2008 complaint against Ms. Green. (See Document 13-6). BWM's December 16, 2009 complaint against Ms. Green reads in part:

> Defendants became indebted to the plaintiff on a consumer account. Under the terms and conditions of the agreement, the defendants are hereby indebted to the plaintiff in the principal sum of $8,947.37, plus interest from the date of the default at the rate of 21.250% per annum and late charges. Defendants also agreed to pay a reasonable attorney fee.

(Document 36, p. 3, lines 16-18; Document 13-6).

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

"BWM, in exercising its professional discretion, believed that [its client creditor] Household's interest and the interest of justice would best be served . . . by issuing a new summons and complaint . . . ."  (Document 32, p. 10, lines 6-9).  Further, referencing its first summons and complaint of August 20, 2008, Defendant makes clear that it "did not 'drop' the suit."  (Document 32, p. 9, lines 18-20).  At the same time, Defendant was aware that "a lawsuit is initiated by the service of a summons and complaint" under Washington State Court Civil Rule ("CR") 3.  (See Exhibit B, at 53:4-10).  Defendant explains that because "more than a year had elapsed since [Defendant] first served Green, . . . a motion for default on notice did not seem appropriate."  (Document 36, p. 3, lines 6-8).  Yet, Defendant is aware that the same is proper procedure under CR 55(f).  (Document 32, p. 10, lines 1-5).  Defendant admits that "[t]here was nothing typical about this case."  (See Exhibit B, at 51:6).  Despite its unusual tactic, Defendant sent no correspondence to Ms. Green that would have explained the nature of Defendant's actions.  (Exhibit B, at 56:4-9).

Q  Was there anything sent with the second complaint to Ms. Green that would have indicated to her that this is a new lawsuit and not a continuation of the first suit that you were served with?

A  There was nothing that was sent with the summons and complaint, second summons and complaint.

(Exhibit B, at 56:4-9).

On April 10, 2010, Ms. Green filed for bankruptcy under Chapter 13, later converted to Chapter 7.  (Document 34, p. 3, lines 15-17).  The instant FDCPA claim was inadvertently not disclosed, and upon learning of the error, the bankruptcy schedules were immediately amended to include the claim on May 5, 2010.  (See Exhibit A, at 69:4-17; Document 13-9, p. 2; Document 13-11, p. 7; Bankruptcy Court Docket, attached to the Declaration of Craig Ehrlich at Exhibit C).  At that point, the bankruptcy case was in its infancy (as was the instant case) and no plan had been confirmed.  (See Exhibit C).  It was not until October 19, 2010 that the case was

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

converted to one under Chapter 7, and the debtors were not discharged until January 24, 2011. (See Exhibit C).

## III.  SUMMARY JUDGMENT STANDARD.

Summary judgment is proper only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 530 (9th Cir. 1985).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" and therefore the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  If reasonable minds may differ as to those inferences, or if any rational trier of fact could resolve an issue in favor of the non-moving party, then summary judgment must be denied.  *Id.*; *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010).  "Questions involving a person's state of mind . . . are generally factual issues inappropriate for resolution by summary judgment. . . . [S]ummary judgment should not be granted where contradictory inferences may be drawn from such facts, even if undisputed."  *F.T.C. v. Network Services Depot, Inc.*, 617 F.3d 1127, 1139 (9th Cir. 2010) (quoting *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531(9th Cir.1985)).

## IV.  THE FDCPA BROADLY PROHIBITS UNFAIR OR UNCONSCIONABLE COLLECTION METHODS, CONDUCT WHICH HARASSES, OPPRESSES OR ABUSES ANY DEBTOR, AND ANY FALSE, DECEPTIVE OR MISLEADING STATEMENTS, IN CONNECTION WITH THE COLLECTION OF A DEBT.

The FDCPA is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties.  See 15 U.S.C. § 1692 *et seq.*  The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights.  15 U.S.C. § 1692k.  The operative provisions of the FDCPA declare certain rights to be

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

provided to or claimed by debtors, forbid deceitful and misleading practices, both generally and in a specific list of disapproved practices, and prohibit harassing and abusive tactics, both generally and in a specific list of disapproved practices.

In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."  15 U.S.C. § 1692(a).  Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. 15 U.S.C. § 1692(b).  It is the express purpose of the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).

Designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, the FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements, in connection with the collection of a debt.  *Baker v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir. 1982); *Heintz v. Jenkins*, 514 U.S. 291 (1995).

## V.        THE FDCPA IMPOSES A STRICT LIABILITY STANDARD.

The FDCPA is a strict liability statute, intended to level the playing field between debtors and debt collectors.  *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010); *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008); *see also Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997).  "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 98148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996); *see also Reichert*, 531 F.3d at 1005 (The FDCPA is a strict liability statute that makes debt collectors liable for violations that are not knowing or intentional). "A single violation of any provision of the Act is sufficient to establish civil liability under the FDCPA." *Taylor*, 103 F.3d at 1238.

## VI.   THE FDCPA MUST BE LIBERALLY CONSTRUED IN FAVOR OF CONSUMER-DEBTORS.

The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor. *Sprinkle v. SB&C Ltd.*, 472 F. Supp. 2d 1235 (W.D. Wash. 2006). The remedial nature of the FDCPA requires that courts interpret it liberally. *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C § 1601 et seq., is a remedial statute, it should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002); *see e.g.*, *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175-76 (9th Cir. 2006). Plaintiff is a consumer-debtor; the very person the FDCPA was enacted to protect.

## VII.   THE FDCPA IS TO BE INTERPRETED IN ACCORDANCE WITH THE LEAST SOPHISTICATED CONSUMER STANDARD.

The FDCPA is to be interpreted in accordance with the "least sophisticated" consumer standard. *See Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006) (FDCPA measures the behavior of debt collectors against the rubric of the "least sophisticated debtor"); *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222 (9th Cir. 1988); *Baker v. G.C. Services Corp.*, 677 F.2d 775, 778 (9th Cir. 1982).

The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naive and trusting, against deceptive debt collection practices, and protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices. *See Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

(9th Cir. 2006) ("This objective standard 'ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking and the credulous.' " *quoting Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993)).

## VIII.   PLAINTIFF IS A CONSUMER, DEFENDANT IS A DEBT COLLECTOR, AND THE SUBJECT OBLIGATION IS DEBT, AS DEFINED BY THE FDCPA.

### A.   Plaintiff Is A "Consumer" As Defined By The FDCPA.

"Consumer" is defined by the FDCPA as "any natural person obligated or alleged to be obligated to repay a debt." 15 U.S.C § 1692a(3). In the instant matter, Defendant attempted to collect from Plaintiff a debt allegedly owed Household Finance Corporation III under a "personal credit line agreement." (Document 13-3). Further, Defendant refers to Plaintiff's collection account as a "consumer account." (See Exhibit B, at 14:2-9). Defendant "do[es] not as a rule handle commercial collections." (See Exhibit B, at 14:21-22). Plaintiff is therefore a person obligated, or alleged to be obligated, to repay a debt, and as such constitutes a "consumer" as defined by the FDCPA.

### B.   Defendant Is A "Debt Collector" As Defined By The FDCPA.

A "debt collector" is defined by the FDCPA as "any person who uses any instrumentality of interstate commerce in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C § 1692a(6). For reason that instrumentalities of interstate commerce include telephone and the mails, virtually all commercial collection activities fall within the realm of the FDCPA. The United States Supreme Court has stated "[t]he Act's definition of the term 'debt collector' includes a person 'who regularly collects or attempts to collect, directly or indirectly, debt owed [to] … another.'" *Heintz v. Jenkins*, 514 U.S. 291 (1995).

In the instant matter, Defendant attempted to collect from Plaintiff a debt allegedly owed a third party creditor.  Defendant utilized instrumentalities of interstate commerce, *i.e.* telephone calls and mailings, in effort to collect the subject debt.  (See Defendant's Responses to Plaintiff's Requests for Admission, attached to the Declaration of Craig Ehrlich at Exhibit D, at #4 and #8).  Accordingly, and because Defendant attempted to collect a debt allegedly owed another, Defendant, for purposes of this matter, is a "debt collector" as defined by the FDCPA.

**C.** **Plaintiff's Alleged Obligation Is A "Debt" As Defined By The FDCPA.**

"Debt" is defined by the FDCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C § 1692a(5).  In the instant matter, Defendant attempted to collect from Plaintiff an alleged debt owed Household Finance Corporation III under a "personal credit line agreement," (Document 13-3), thus constituting personal, family, or household goods and services.  The subject alleged obligation is therefore a "debt" as defined by the FDCPA.

**IX.** **GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER DEFENDANT VIOLATED THE FDCPA AT § 1692e(5).**

The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The sixteen subsections of section 1692e provide a non-exhaustive list of practices that fall within such prohibited conduct.  Proscribed action includes "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).  Section 1692e(5) of the FDCPA specifically prohibits threats of legal action that is forbidden under federal or state law.  In order to establish a violation of § 1692e(5), a plaintiff must show that a lawsuit could not properly be brought or that the defendant did not actually intend to bring a lawsuit. *See, e.g.,*

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

*Degonzague v. Weiss, Neuren & Neuren*, 89 F. Supp. 2d 282 (N.D.N.Y. 2000); *Sluys v. Hand*, 831 F. Supp. 321, 327 (S.D.N.Y. 1993).

Where the clear import of a communication can be taken as a whole to mean "that *some* type of legal action has already been or is about to be initiated and can be averted from running its course only by payment," and where the referenced action is not taken, or cannot be taken, a violation of section 1692(e)(5) is established.  *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22 (2d Cir. 1989) (emphasis in original); *see also Baker v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir. 1982).

"A debt collector may also not misrepresent the imminence of such action.  A debt collector's implication, as well as a direct statement, of planned legal action may be an unlawful deception.  For example, reference to an attorney or to legal proceedings may mislead the debtor as to the likelihood or imminence of legal action."  53 Fed. Reg. 50106.  JA-33 at 56; *see also Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993) ("the 'least sophisticated consumer' would interpret [communication from the debt collector] to mean that legal action was authorized, likely and imminent."  Because legal action was not imminent, the debt collector's "statements [were] 'false, deceptive, [and] misleading' within the meaning of the FDCPA.").

**A.     Defendant Violated § 1692e(5) By Threatening To Take Action That It Did Not Intend to Take.**

By serving Plaintiff with an unfiled summons and complaint on August 20, 2008, Defendant threatened to take legal action.  (Document 13-3).  When that complaint was not filed within a reasonable period of time, Plaintiff thought that Defendant was "bluffing" as to whether it was going to take the threatened legal action.  (See Exhibit A, at 47:8-20).  Defendant did nothing to correct its misrepresentation, as it sent Plaintiff no correspondence to inform Plaintiff of the status of the lawsuit.  (See Exhibit B, at 82:18-83:4, 83:23-84:19).  That Defendant did not

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

intend to file its August 20, 2008 complaint is evident because the complaint was, in fact, never filed.  (Document 11, p. 10, line 14).  Plaintiff could not have discovered this violation until after a reasonable amount of time had passed.  Based upon these facts, whether defendant intended to file its August 20, 2008 complaint is a question of fact for the jury to decide.  *See F.T.C. v. Network Services Depot, Inc.*, 617 F.3d 1127, 1139 (9th Cir. 2010).

Further, even if the service of the November 4, 2009 summons and complaint could be seen as a continuation of the action commenced on August 20, 2008, by delaying over a year to file with no correspondence to Plaintiff whatsoever to explain the reason for the delay, Defendant misrepresented the imminence of the lawsuit, and therefore violated § 1692e(5).

**B.      Defendant Violated § 1692e(5) By Taking Action That Could Not Legally Be Taken.**

Washington Superior Court CR-3 provides that "a civil action is commenced by service of a copy of a summons together with a copy of a complaint . . . or by filing a complaint." Therefore, when Defendant served Plaintiff with a summons and complaint on August 20, 2008, it commenced an action against Plaintiff.  Thereafter, when Defendant served Plaintiff with a different summons and complaint on November 4, 2008, it initiated a second action against Plaintiff.

"It is fundamental that a plaintiff is not authorized to ignore an action brought by him and bring a second action against the same party or parties on the same state of facts." *Circumstances under which Court May Abate a Prior Action and Permit Parties to Proceed in Subsequent Action*, 6 A.L.R.3d 468, at §1 (1966).  The "underlying principle being that no one should be harassed and oppressed by two actions for the same cause brought by the same person or persons."  *Id.*  Washington State courts do not allow a plaintiff to maintain two open actions on the same set of facts.  *See Gilman v. Gilman*, 41 Wash. 2d 319, 322 (1952) (holding the existence of a prior action between the same parties for the same cause constitutes a defense

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

allowing for abatement of the second action); *Jones v. City of Centralia*, 157 Wash. 227 (1930) (dismissing a subsequent action alleging the substantially same facts as a previously initiated action); *Brice v. Starr*, 93 Wash. 501 (1916) ("The pendency of an action will make a second action, for the same cause, and in which the same judgment can be rendered, abatable."). The reason for the rule preventing multiple actions is to prevent confusion and embarrassment. *Gilman*, 41 Wash. 2d at 323.

This is consistent with the rule preventing multiple actions in federal courts. A plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Adams v. California Dept. of Health Services*, 487 F.3d 684, 688 (9th Cir. 2007) (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) ("When the district court became aware that the two actions begun by Mrs. Walton were virtually identical, it could have dismissed her second complaint without prejudice or it could have stayed proceedings in the second action until judgment was entered in the first.")); *see also Zerilli v. Evening News Association*, 628 F.2d 217, 222 (D.C. Cir. 1980) (claim against federal defendants dismissed on ground that "the count is precisely the same as a count pending in a related case . . . between the same parties before this Court"); *Sutcliffe Storage and Warehouse Co. v. United States*, 162 F.2d 849, 851 (1st Cir. 1947) (citing Moore's Federal Practice to effect that pendency of prior pending action in same federal court is grounds for abatement or dismissal of second action as there is "no reason why a court should be bothered or a litigant harassed with duplicating lawsuits"). A plaintiff is "required to bring all of her claims against [a defendant] arising from a single cause of action in one suit." *Adams*, 487 F.3d at 688, n. 1.

In this case, the two actions commenced against Ms. Green were based on the same set of facts – both suits were initiated in effort to collect on the same subject debt. Defendant even

refers to its August 20, 2008 summons and complaint as "the first action."  (Document 32, p. 11, line 19).  In addition, Defendant makes it clear that it "did not 'drop' the suit."  (Document 32, p. 9, lines 18-20).  It then commenced a second suit by serving a different summons and complaint on Ms. Green.  This is an action that cannot legally be taken, in violation of 15 U.S.C. § 1692e(5).

## X.    GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER DEFENDANT VIOLATED THE FDCPA AT § 1692e(2)(A).

In addition to the FDCPA's general prohibition against false, deceptive, or misleading representations, the FDCPA specifically prohibits the false representation of "the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).

In this case, Defendant misrepresented the legal status of Plaintiff's alleged debt by serving Plaintiff with two different summonses and complaints for the same debt.   (See Documents 13-3 and 13-6).  Defendant represented to Plaintiff that legal action had been instituted and would be pursued absent payment in full by service of its August 20, 2008 summons and complaint.  Then on November 4, 2008, it represented to Plaintiff that a second legal action on the same debt had been initiated by service a second summons and complaint. This is a false representation of the legal status of Plaintiff's debt, because Defendant is prohibited from maintaining two open actions on the same debt.

Alternatively, even if service of the second summons and complaint did not in fact initiate a new lawsuit on the same debt, Defendant would still have violated § 1692e(2)(A) by misrepresenting the legal status of Plaintiff's debt.  When Defendant served Plaintiff with a second, yet different, summons and complaint for the same debt, this represented that a second action had been commenced.  If it in fact had not been,[1] this is inherently misleading.  Defendant

---

[1] As Defendant contends, "no 'second action' was commenced."  (Document 32, p. 9, line 16).  Therefore, this alternative theory is supported by Defendant's own admission.

Plaintiff's Response to Defendant's Motion for Summary Judgment – 14 - 3:10-CV-05206-BHS

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

may seek to capitalize on its deception to its advantage.  Plaintiff may feel overwhelmed by the prospect of defending against multiple lawsuits, and Defendant would be able to coerce payment out of Plaintiff – not because Plaintiff feels she owes the debt, but out of a sense of intimidation and confusion.  The FDCPA was designed to protect against precisely this type of deceptive behavior.

## XI.   GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER DEFENDANT VIOLATED THE FDCPA AT § 1692e(10).

The FDCPA establishes a general prohibition against the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e; *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).  Section 1692e sets forth a non-exhaustive list of practices that fall within this ban, including subsection 10 which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692e(10).  One of the goals of this section is "that the unsophisticated consumer is to be protected against confusion whatever form it takes."  *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997).

A debt collection practice may violate the FDCPA even if it does not fall within specific conduct enumerated by the FDCPA.  *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir. 1993).  Congress, recognizing that it would be impossible to foresee every type of deceptive collection misbehavior, expressly included in the FDCPA a general standard affording courts the ability to proscribe conduct not specifically addressed in section 1692e.  S. Rep. No. 382 at 4; *see also* FTC Official Staff Commentary § 807.

Because the act imposes strict liability, a plaintiff need not show actual confusion to state a claim under the FDCPA.  *Johnson v. Equifax Risk Management Services*, 2004 WL 540459, at *7, n. 24 (S.D.N.Y. Mar. 17, 2004) (citing *Russel v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996)); *see also United States v. National Financial Services, Inc.*, 98 F.3d 131 (4th Cir. 1996)

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

(holding the test for deception is the "capacity of the statement to mislead; evidence of actual deception is unnecessary.").

In this case, Defendant served Plaintiff with a summons and complaint to collect a debt. (Document 13-3).  After agreeing to take semi-monthly payments to collect the debt, Defendant took four payments and then ceased all collection action.  (Document 34, p. 2, lines 3-5; Document 36, p. 2, lines 20-21; Exhibit A, at 49:12-50:4).  Defendant sent Plaintiff no correspondence of any sort until it served her with a second summons and complaint on November 4, 2009.  (See Exhibit B, at 84:25-85:12).  Plaintiff was given no explanation whatsoever for the Defendant's year-long delay in collecting the account.  (See Exhibit B, at 82:18-83:4, 83:23-84:19).

Defendant actions would have misled the least sophisticated consumer.  By sending Plaintiff correspondence and serving her with a summons and complaint to collect a debt, actively collecting the debt by receiving payments, and then suddenly ceasing all contact with Plaintiff for a year, the least sophisticated consumer would be misled into believing that Defendant was no longer collecting the debt.  The FDCPA, through its general prohibition of misleading behavior, seeks to prevent debt collectors from precisely this type of behavior.  Its application in this case is similar to the equitable doctrine of laches, which "bars an action where a party's unexcused or unreasonable delay has prejudiced his adversary." *Boone v. Mechanical Specialties Co.*, 609 F.2d 956, 958 (9th Cir. 1979).  Defendant's year-long delay in pursuing its claim was unreasonable.  If any excuse existed, it was not made known to Plaintiff, as Defendant failed to communicate with Plaintiff at all during its delay.

## XII.  GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER DEFENDANT VIOLATED THE FDCPA AT § 1692d.

The FDCPA proscribes certain debt collector conduct that is oppressive, harassing, or abusive.  15 U.S.C. § 1692d.  The FDCPA prohibits a debt collector from engaging in any

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. 15 U.S.C. § 1692d.  The FDCPA specifies explicit conduct which is, by express statutory language, harassment or abuse.  15 U.S.C. § 1692d(1)-(6).

Enumerated conduct prohibited by section 1692d is not, however, an exhaustive listing of conduct violative of the 15 U.S.C. § 1692d.  *See Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383 (D. Del. 1991) (finding that even where the defendants' conduct did not fall within the specific types of conduct listed, Congress has authorized the courts to fill in the gaps left by the statute).  Stated otherwise, the FDCPA includes a "catch-all" provision which prohibits conduct the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt.

In this case, by initiating two lawsuits for the same cause of action, on the same set of facts, Defendant engaged in harassing, oppressive, and abusive conduct.  *See Sutcliffe Storage and Warehouse Co. v. United States*, 162 F.2d 849, 851 (1st Cir. 1947) (finding there is "no reason why a court should be bothered or a litigant harassed with duplicating lawsuits").  This is the reason why courts do not allow duplicative lawsuits to be brought, because "no one should be harassed and oppressed by two actions for the same cause brought by the same person or persons." 6 A.L.R.3d 468, at §1.  It is fundamental that a plaintiff cannot recover twice over for the same injury.  If a lawsuit has already been commenced to recover for an injury, no additional recovery may be had in bringing a second lawsuit for the same injury.  Therefore, the only reason to bring such a suit is to harass the opposing party.  Defending a lawsuit requires time and money.  Bringing a second suit for the same injury unnecessarily increases the cost to defend.  Seeking to place this unreasonable burden on Ms. Green is harassing, oppressive, and abusive.  Therefore, when it initiated a second suit against Ms. Green for the same injury, Defendant violated § 1692d.

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

**XIII. GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER DEFENDANT VIOLATED THE FDCPA AT § 1692f.**

15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Section 1692f serves a back-stop function, designed to allow the courts to address behavior not specifically enumerated, but unfair and unconscionable nonetheless. *See Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1461 (C.D. Cal. 1991). In enacting § 1692f, Congress employed general language to "enable the courts, where appropriate, to proscribe . . . improper conduct which is not specifically addressed." S. Rep. No. 95-832, 95th Cong., 1st Sess. 4, reprinted in 1977 U.S. Code Cong. & Admin. News 1695, 1698.

The FDCPA defines neither the term "unconscionable," nor "unfair." The FDCPA does, however, broadly enumerate several practices considered contrary to its stated purpose, forbidding such action both generally and in a specific list of disapproved practices. Particular to "unfair or unconscionable means" the FDCPA lists eight specific violations "without limiting the general application" of the statute. 15 U.S.C. § 1692f. As the section 1692f of the FDCPA explicitly states, the listing of the eight specific violations was not intended to limit the applicability of the general prohibition of "unfair or unconscionable" behavior. *See McMillan v. Collection Professionals Inc.*, 455 F.3d 754 (7th Cir. 2006); *Masuda*, 759 F. Supp. at 1461. Overarching themes relating to the term unconscionable have been depicted as the prevention of oppression and unfair surprise, as well as one-sidedness and simple fairness. *See, e.g., Fotomat Corp. of Fla. v. Chanda*, 464 So. 2d 626, 629 (Fla. App. 5th Dist. 1985); *Wille v. Southwestern Bell Tel. Co.*, 549 P.2d 903, 906-907 (Kan. 1976); *Schroeder v. Fageol Motors*, 544 P.2d 20, 23 (Wash. 1975).

Significant, the Ninth Circuit has held that whether conduct violates 15 U.S.C. § 1692f as "unfair and unconscionable," is a question of fact, to be determined by the fact finder. *See e.g.*

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

*Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1517 (9th Cir. 1994) ("A jury could rationally find the filing of an application for a writ of garnishment when the Foxes were current in payments demanded by Citicorp agents to constitute an unfair or unconscionable means of collection or attempted collection of a debt under section 1692f."); *see also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010) ("[W]hether Unifund's letter constitutes an 'unfair or unconscionable means to . . . attempt to collect a debt' for purposes of § 1692f presents a jury question."); *McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 760 (7th Cir. 2006) ("the requisite inquiries under § 1692e and § 1692f are necessarily fact-bound"); *Riley v. Giguiere*, 631 F. Supp. 2d 1295, 1308 (E.D. Cal. 2009) ("Were a factfinder to credit plaintiff's evidence and draw inferences in his favor, defendant's actions would have violated § 1692f(1), per that section's plain language."); *Hosseinzadeh v. M.R.S. Associates, Inc.*, 387 F. Supp. 2d 1104 (C.D. Cal. 2005) (summary judgment inappropriate where a reasonable fact finder could conclude that defendant's behavior violated § 1692f).

In this case, Defendant served Plaintiff with an unfiled summons and complaint. (Document 13-3).   It then began to collect payments, and when one was missed, it ceased all contact for a year and gave Plaintiff no explanation as to what was going on.   (See Exhibit A, at 49:12-50:4; Exhibit B, at 82:18-83:4, 83:23-84:19).   Then on December 16, 2009, it filed a second, different summons and complaint.   (Document 13-6).

"BWM, in exercising its professional discretion, believed that [its client creditor] Household's interest and the interest of justice would best be served . . . by issuing a new summons and complaint . . . ."   (Document 32, p. 10, lines 6-9).   Further, referencing its first summons and complaint of August 20, 2008, Defendant makes clear that it "did not 'drop' the suit." (Document 32, p. 9, lines 18-20).   At the same time, Defendant was aware that "a lawsuit is initiated by the service of a summons and complaint" under Washington State Court Civil

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

Rule ("CR") 3.  (See Exhibit B, at 53:4-10).  Defendant explains that because "more than a year had elapsed since [Defendant] first served Green, . . . a motion for default on notice did not seem appropriate."  (Document 36, p. 3, lines 6-8).  Yet, Defendant is aware that the same is proper procedure under CR 55(f).  (Document 32, p. 10, lines 1-5).  Defendant admits that "[t]here was nothing typical about this case."  (See Exhibit B, at 51:6).  Despite its unusual tactic however, Defendant sent no correspondence to Ms. Green that would have explained the nature of Defendant's actions.  (Exhibit B, at 56:4-9).

Defendant's claims that it was simply attempting to provide Plaintiff with as much notice as possible before moving for default are tendentious and self-serving.  Defendant's service of a different summons and complaint had just the opposite effect: to confuse.  If CR 55(f) provides the proper procedure to move for default, and especially because Defendant was aware of the local rules, there is no reason why Defendant would not have just followed the local rules if it were simply trying to provide Plaintiff with notice.  Rather, Defendant attempted to abuse the legal process in order to gain an unfair advantage over Plaintiff.  Given the great length of time that had passed, and given that no communication had taken place, Defendant could have simply spoken with Plaintiff and likely avoided the confusion it caused.  Defendant's conduct was unfair to Plaintiff as it confused and intimidated Plaintiff, all under the guise of providing notice.  This unfair conduct to collect a debt violates § 1692f.

Defendant's reliance on *Broyles v. Thurston County*, 195 P.3d 985 (Wash. App. 2008) is misplaced.  In that case, a plaintiff followed proper procedures to file a voluntary nonsuit in order to exercise his right to a jury trial.  *Broyles*, 195 P.3d at 1006-07.  Important, the court noted that "[t]here was no confusion."  *Id.* at 1007.  In this case, by contrast, as Defendant notes, it "did not 'drop' the suit."  Then, it served a second, different summons and complaint on

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

Plaintiff a year later.  Defendant ignored civil procedural rules of which it was aware, and as a result, its actions were very confusing.

## XIV.  GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER DEFENDANT VIOLATED RCW § 19.16.250(14).

RCW § 19.16.250(14) states that a debt collector may not "[c]ommunicate with the debtor and represent or imply that the existing obligation of the debtor may be or has been increased by the addition of attorney fees, investigation fees, service fees, or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation of such debtor."

In this case, when Defendant served Plaintiff with an unfiled summons and complaint on August 20, 2008, it sought to collect "$8,947.37, plus interest at the rate of 21.25% per annum on the unpaid balance."  (Document 13-3).  After four payments were made by agreement, Defendant sat on its hands and ceased collecting the debt for a year.  (Document 34, p. 2, lines 3-5; Document 36, p. 2, lines 20-21; Exhibit A, at 49:12-50:4).  Defendant sent Plaintiff no correspondence of any sort until it served her with a second summons and complaint on November 4, 2009.  (See Exhibit B, at 84:25-85:12).  Plaintiff was given no explanation whatsoever for the Defendant's year-long delay in collecting the account.  (See Exhibit B, at 82:18-83:4, 83:23-84:19).  Defendant's November 4, 2009 complaint sought to collect interest compounded throughout the entire period of time the alleged debt was owed, despite Defendant's complete inaction in collecting the debt for a year.  (See Document 13-6).

It is well-established in Washington that under the common law of contracts, an injured party must use reasonable means to mitigate their damages.  *See, e.g., Young v. Whidbey Island Bd. of Realtors*, 638 P.2d 1235, 1237 (Wash. 1982).

In this case, with no explanation to Plaintiff, Defendant waited a year to move forward with suit and to serve a separate summons and complaint rather than file the first summons and

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

complaint, both of which caused an unjustified increase in the amount demanded from Defendant in the second complaint.  Thus, Defendant's representation that it was entitled to collect interest from the entire period where it decided to sit on its hands and delay filing is a violation of RCW § 19.16.250(14).

## XV.   PLAINTIFF'S CLAIMS ARE NOT BARRED BY JUDICIAL ESTOPPEL OR JUDICIAL ADMISSION.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).   As Defendant itself notes:[2] "It is well established that judicial estoppel may apply to parties who accrue legal claims, file for bankruptcy, fail to list the claims among their assets, and then attempt to pursue the claims **after the bankruptcy discharge**."   *Bartley-Williams v. Kendall*, 138 P.3d 1103, 1105 (Wash. App. 2006) (citing *Hamilton*, 270 F.3d at 782-86) (emphasis added)).   The idea is to prevent a party from using trickery to mislead the courts to its own advantage; and in the bankruptcy context, a party cannot fail to list a claim under her assets and then later pursue that same claim.  *Hamilton*, 270 F.3d at 783-84.

In this case, no such trickery took place.   On April 10, 2010, Ms. Green filed for bankruptcy under Chapter 13, later converted to Chapter 7. (Document 34, p. 3, lines 15-17). The instant FDCPA claim was inadvertently not disclosed, and upon learning of the error, the bankruptcy schedules were immediately amended to include the claim on May 5, 2010.  (See Exhibit A, at 69:4-17; Document 13-9, p. 2; Document 13-11, p. 7; Exhibit C).  At that point, the bankruptcy case was in its infancy (as was the instant case) and no plan had been confirmed. (See Exhibit C.  It was not until October 19, 2010 that the case was converted to one under Chapter 7, and the debtors were not discharged until January 24, 2011.  (See Exhibit C).

---

[2] Document 32, p. 21, lines 6-9).

Plaintiff's Response to Defendant's Motion for Summary Judgment – 22 - 3:10-CV-05206-BHS

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 98148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

At no point did Plaintiff ever attempt to mislead the courts.  The instant claim was included in the bankruptcy schedules as soon as its omission was realized, which was at a very early stage of both the bankruptcy and the instant proceedings.  This is not a case where a party has attempted to avoid listing the claim in bankruptcy in order to pursue it later without consequence.  Plaintiff has at all times acted in good faith, both in the bankruptcy proceeding and in this matter.

## XVI.   PLAINTIFF'S CLAIMS ARE NOT BROUGHT IN BAD FAITH.

Courts have liberally construed the FDCPA to effectuate its broad remedial purpose and to shield consumers from abusive debt collection practices.  *Rouse v. Law Offices of Rory Clark*, 603 F.3d 699, 705 (9th Cir. 2010).  It is for this reason that a defendant's "burden of proof under [15 U.S.C. § 1692k(a)(3)] is substantial."  *Grant v. Barro*, 2007 WL 3244986, at *2 (M.D. La. Nov. 1, 2007).

"To recover attorney's fees under the FDCPA, the prevailing defendant must show affirmatively that the plaintiff brought the FDCPA claim in bad faith and for the purpose of harassment."  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1211 (5th Cir. 1985).  Bad faith under § 1692k(a)(3) is "not simply bad judgment or negligence, but . . . the conscious doing of a wrong because of a dishonest person or moral obliquity."  *Shah v. Collecto, Inc.*, 2005 WL 2216242, at *14 (D. Md. Sept. 12, 2005); *see also Sanchez v. United Collection Bureau, Inc.*, 649 F. Supp. 2d 1374, 1382 (N.D. Ga. 2009) ("The standard for bad faith is higher than the standard for mere frivolousness.").

Courts award attorney's fees for bad faith only in extraordinary circumstances.  *See Black v. Equinox Financial Mgmt. Solutions, Inc.*, 444 F. Supp. 2d 1271, 1275 (N.D. Ga. 2006); *Sierra v. Foster & Garbus*, 48 F. Supp. 2d 393, 396 (S.D.N.Y. 1999).  By contrast, courts have declined to find bad faith where a plaintiff had reason to believe that the defendant was a debt collector

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

and that it violated the FDCPA. *Franco v. Maraldo*, 2000 WL 288378, at *6 (E.D. La. Mar. 16, 2000). Incorrectly pursuing a cause of action under the FDCPA does not alone constitute bad faith. *Archer v. Beasley*, 1991 WL 34889, at *3 (D.N.J. Mar. 5, 1991); *Campbell v. Credit Bureau Sys., Inc.*, 655 F. Supp. 2d 732, 742-43 (E.D. Ky. 2009). Even if a plaintiff admits that he does not feel harassed, threatened, or misled by a defendant's conduct, that is not enough to show bad faith. *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85 (2d Cir. 2008) ("the FDCPA permits and encourages parties who have suffered no loss to bring civil actions for statutory violations.").

No such extraordinary circumstances are present here to warrant a finding of bad faith. Quite the opposite, not only does Plaintiff have reason to believe that Defendant is a debt collector and that it violated the FDCPA, Plaintiff has competent evidence to support the same. Defendant, however, has produced no evidence to support a finding of bad faith.

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendant's motion for summary judgment in its entirety.

Respectfully submitted this 7th day of February, 2011.

/s/ Jon N. Robbins
Jon N. Robbins
28991
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd.
Loon Lake, WA 99148
509-232-1882
866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2011, I electronically filed the foregoing document with the clerk of the U.S. District Court for the Western District of Washington at Tacoma using CM/ECF, which shall notify the following: Krista L. White, Bishop, White, Marshall & Weibel, P.S., 720 Olive Way, Suite 1201, Seattle, Washington 98101-1801, Attorney for Defendant

/s/ Jon N. Robbins
Jon N. Robbins

Jon N. Robbins
WEISBERG & MEYERS, LLC
3877 N. Deer Lake Rd., Loon Lake, WA 99148
509-232-1882 / 866-565-1327 facsimile
jrobbins@AttorneysForConsumers.com